PETER W. FRENCH *vs.* BOSTON NATIONAL BANK.

Suffolk.  March 19, 1901. — June 19, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Equity Jurisdiction*, Specific performance. *Contract*, Construction, Consideration. *Frauds, Statute of*, Part payment, Acceptance and receipt. *Insolvency.*

The plaintiff had transferred certain stocks to the defendant, a bank, as security for his note for $5,000. Thereafter the plaintiff was adjudged an insolvent. The defendant on its own petition was ordered by the Court of Insolvency to sell the

securities and apply the proceeds upon the note. Thereupon the plaintiff and defendant made an oral agreement, that the plaintiff should procure some one to purchase certain of the securities for $1,000, which sum when paid should be credited upon the note, that the defendant should bid in the remaining securities for $2,700 in all if no higher bid was made for them and the amount of the bids should be indorsed upon the note, that the defendant should hold and carry the securities thus bid in, and, upon receiving from the plaintiff the amount of its bids with interest, and the balance of the $5,000 of the note with interest, should convey the securities to the plaintiff. In pursuance of this agreement the plaintiff procured a purchaser who paid $1,000 for the securities to be sold for that sum, and the defendant delivered those securities and indorsed the payment on the note and on the same day bid in at auction the remaining securities for $2,700 and indorsed that amount on the note. The defendant proved for the balance of its claim in insolvency and received a dividend. The plaintiff received his discharge. In a bill for a specific enforcement of this contract, by ordering the defendant to deliver the securities to the plaintiff on his paying to the defendant the balance of his indebtedness, it was *held,* that the contract was entire, embodying a single scheme, each part having reference to the others, by which the plaintiff might save his collateral; that, assuming the contract to be within the statute of frauds, the statute was satisfied by the payment of the $1,000 by the purchaser procured by the plaintiff and the acceptance and receipt by him of the securities thereby purchased; that the plaintiff's agreeing to procure and procuring such purchaser could be found to be a good consideration for the promise of the defendant; and that the contract was one which the court would specifically enforce in spite of there being no mutuality of remedy when the contract was made, as the plaintiff must perform his part of the contract by tendering the balance of his indebtedness before the time for performance by the defendant could arise.

A part payment made by a purchaser procured by one of the parties to an oral contract of sale in accordance with the terms of the contract satisfies the statute of frauds as much as if made by one of the parties to the contract. So also of an acceptance and receipt of part of the goods by such purchaser.

The assent of an assignee in insolvency to the maintenance of a suit by the insolvent after his discharge, to enforce a contract to deliver to him certain securities, is sufficiently shown by the assignee acting as counsel for the plaintiff.

BILL IN EQUITY to compel the delivery to the plaintiff of certain certificates of stock on payment by the plaintiff to the defendant of a certain sum of money in accordance with an oral agreement between the parties, amended from an action of contract claiming damages for the defendant's failure to deliver the securities. Writ in action at law dated January 18, 1897, amendment allowed and bill in equity filed March 15, 1898.

. In the Superior Court the case was heard by *Bell,* J., who ordered a decree to be entered for the plaintiff in accordance with a master's report, and allowed exceptions alleged by the defendant. The defendant also appealed from the decree. The case is fully stated in the opinion of the court.

*F. E. Snow & W. B. French,* for the defendant.

*E. W. Hutchins & S. L. Whipple,* for the plaintiff.

HOLMES, C. J.    This is a bill in equity brought to obtain the delivery of certificates of indebtedness issued by the receiver of the Lebanon Springs Railroad Company for $5,000, and of certificates for seven hundred and ninety-nine shares of the preferred stock and two hundred and thirty-eight shares of the common stock of the United Shoe Machinery Company, on the ground of the transactions which we shall state.    In the Superior Court a decree was entered for the plaintiff upon a master's report, and the case is here by appeal and also on exceptions to the refusal of rulings asked on behalf of the defendant.    The exceptions are not material as such, the question before us being the general one whether the master's report warrants the decree.

The receiver's certificates and stock now represented by the certificates of stock just mentioned were transferred by the plaintiff to the defendant as security for a note for $5,000, dated December 10, 1892, but if the plaintiff's view of the case is right the amount remaining to be paid upon the note has been more than paid by the dividends and interest received by the defendant from the securities.

On February 9, 1893, the plaintiff was adjudged an insolvent, and on July 19, the defendant, upon its own petition, was ordered by the Court of Insolvency to sell the securities and to apply the proceeds upon the note.    It went through the form of a sale on September 6, credited the proceeds, proved for the balance remaining due, and received a dividend.    On September 20, 1893, the plaintiff received his discharge.

In August, before the sale, the plaintiff and defendant made an oral agreement reported by the master in the following words : " The plaintiff was to procure some one to buy the 25 shares of National Tube Works stock for one thousand dollars ($1,000), which sum when paid was to be credited upon the said five thousand dollar ($5,000) note.    The defendant was to bid in at the auction sale the receiver's certificates for one thousand dollars ($1,000), and the 1,701 shares of McKay & Copeland stock for seventeen hundred dollars ($1,700), if no higher bid for either was made at the auction, and the amount of said bids

was to be indorsed upon said note. The defendant was to hold and carry said certificates and stock, and upon receiving from the plaintiff the amount of said bids with interest, and the balance of said five thousand dollar ($5,000) note with interest, was to convey said certificates and stock to the plaintiff."

" On September 6, 1893, the plaintiff, in pursuance of said agreement, procured one Plummer to buy said National Tube Works stock, who paid defendant one thousand dollars ($1,000) therefor and received the stock from the defendant, who indorsed the one thousand dollars ($1,000) upon said note. On the same day the defendant, in pursuance of said agreement, bid in at auction the said certificates and McKay & Copeland stock for twenty-seven hundred dollars ($2,700), and indorsed said amount upon the note." The money stated to have been paid by Plummer in the passage just quoted from the master's report is shown by another passage actually to have been handed to the defendant by the plaintiff, the money having been furnished to him by Plummer, who was his friend. At the same time the plaintiff received the National Tube Works stock on Plummer's behalf.

We are of opinion that the agreement found by the master is an entire and binding contract which may be specifically enforced. In the first place it is an entire contract. It is not like the purchase of a number of articles in a shop where the only unity is that of time, although such a contract as that might be regarded as entire so far as the statute of frauds is concerned. *Baldey* v. *Parker*, 2 B. & C. 37. *Elliott* v. *Thomas*, 3 M. & W. 170. It embodies a single scheme, each part having reference to the others, by which the plaintiff might save his collateral. This being so, and assuming for the purposes of decision that the contract is within the statute of frauds, Pub. Sts. c. 78, § 5, the statute was satisfied by the payment of the thousand dollars and the acceptance and receipt of the Tube Works stock by the purchaser furnished by the plaintiff under his agreement. See *Dean* v. *Tallman*, 105 Mass. 443. It is unnecessary to consider whether the furnishing of a purchaser by French would not have been enough. Compare *Boardman* v. *Cutter*, 128 Mass. 388, with *Weir* v. *Hudnut*, 115 Ind. 525. Benj. Sales, (4th ed.) 175, (7th Am. ed.) 177.

It is denied that there was any consideration for the defendant's undertaking. We quite agree that reliance upon a promise gives it no new validity when such reliance is not the conventional inducement of the promise, that is to say, when it is not contemplated by the terms of the bargain as the equivalent of the promise. *Martin* v. *Meles, ante,* 114. *Bragg* v. *Danielson,* 141 Mass. 195, 196. *Manter* v. *Churchill,* 127 Mass. 31. *Boyd* v. *Freize,* 5 Gray, 553, 555. This may have been the ground for the decision in *Boardman* v. *Cutter,* 128 Mass. 388. We agree on this ground that it would be hard to extract a consideration from the fact that the plaintiff dropped other negotiations which he had begun with a view to saving his security. But the plaintiff's agreeing to procure and procuring a purchaser of the Tube Works stock is stated in a form which naturally conveys the notion that it was the equivalent on his side for what the defendant was to do on the other. One may surmise that it was as likely to be regarded as part of a plan benevolently intended as a favor to the plaintiff throughout rather than as a consideration. But as was remarked in the recent decision of *Martin* v. *Meles, ubi supra,* courts have been astute to discover a consideration in such counter undertakings, for the purpose of upholding business transactions seriously entered. into, and when made intended to bind. Certainly we cannot say that the plaintiff's promise or performance might not have been a consideration, or that the master and the judge of the Superior Court, who had the evidence as well as the report before him, were not warranted in finding it to have been so.

What we have said last suggests a difficulty which we should feel in reversing the decree. The master reported the evidence as well as his findings of fact. The evidence is not before us but was before the judge of the Superior Court. It would be hard to say that the decree might not have been warranted by what the judge found even if not by the master's report. But we have preferred to discuss the case on the footing that the decree was founded on the master's report alone.

The final objection to specific performance that when the agreement was made there was no mutuality of remedy is disposed of by *Howe* v. *Watson, ante,* 30, decided since this case was argued.

The plaintiff prevails upon the footing of a new contract made with him after the insolvency, and therefore the assent of the assignee to the maintaining of this suit is unnecessary. It is sufficiently shown, however, by his acting as counsel for the plaintiff.

As what we have said is enough to dispose of the case, we do not consider it from the other points of view from which it was presented in argument.

*Exceptions overruled ; decree affirmed.*