[No. 3779.]

## DENVER PRESSED BRICK COMPANY v. LEFEVRE.

CONTRACT—*Consideration.* Offer of the soil of a lot, and a promise from the one to whom the offer is made to remove it. There was no understanding that the soil, or the value of it, was offered, considered, or accepted as a consideration for the promise to remove. *Held* that the engagement was gratuitous, and the promise to remove without consideration, and imposed no obligation or liability. The damage resulting

from the failure to remove the soil was no consideration for the promise to remove it.

Nor was the permission of the land-owner to the other to enter, or the surrender of possession for the purpose of affecting the removal.

*Appeal from Denver District Court.* HON. GREELEY W. WHITFORD, Judge.

Messrs. McKNIGHT & HENRY, and Mr. M. H. FARRINGTON for appellant.

Messrs. FRANK T. JOHNSON, EDWARD RING, and OWEN E. LEFEVRE for appellee.

MORGAN, Judge.

On petition for rehearing the original opinion is modified and rehearing denied.

The appellee had judgment for $824.10 in the Denver district court on her complaint, filed October 20, 1910, for damages for breach of a contract. Appellant assigns error, that no contract was made or proved, and that there was no consideration.

The complaint states that a contract was entered into for a good and sufficient consideration between the plaintiff and the defendant, whereby the latter agreed to remove the top soil from certain lots belonging to the plaintiff, to the depth of about five and one-half feet; that defendant removed part of it and refused to remove the balance. Damage is claimed for the breach.

The evidence of the plaintiff does not support the allegations of her complaint. Her husband testified that he called up the defendant brick company, by telephone, and talked with the superintendent, and, after telling him what he wanted done, made an appointment to meet him at the company's yards, the superintendent saying that, in the meantime, he would look at the lots from which the plaintiff wanted the soil removed; that they met, pur-

suant to the appointment, and walked over to the lots, at which place they discussed the manner in which the soil should be removed, and where the work should begin; that he told the superintendent what he wanted done, and explained how he wanted to build on the lots, by removing all the dirt, and facing his buildings toward the north, and thus gain greater frontage; that he thought the defendant's teams were at work at that time, removing the soil; that the superintendent said at that time that he would remove it, and afterwards did remove a portion, but not all, of it; that he asked the superintendent some time thereafter, and after work had been suspended, when he intended to finish it, and that the superintendent replied that he would do so as soon as the spring season opened. He further testified that he went to Europe soon after that, and, while in Paris, received a letter from the brick company stating that it found the dirt did not make good brick and that it would not remove the balance of it. Stripped of all immaterial matter the foregoing is all of the plaintiff's evidence, except some testimony as to what it would cost to remove the balance of the dirt.

The defendant, by its answer, denied the contract, alleged, and the consideration, and stated that the plaintiff offered to give the soil to it, and that, to said offer it answered that it would take it and not charge the plaintiff anything for removing it, if it proved suitable for the manufacture of faced brick; that it did not prove suitable; and denied the damage alleged.

The defendant offered no testimony as to the alleged contract, nor to prove that the acceptance was conditional, but only that it tested the soil and found the brick made from it were full of white specks, not first class, and were salable for a less price on the open market than its own brick; and, as plaintiff denied in her replication

that the acceptance was conditional, that matter will not be considered.

From all the evidence and the admissions in the answer it is impossible to infer anything more than this: that there was an offer of the plaintiff to give the soil to the defendant and an acceptance thereof coupled with a statement by the defendant that it would remove it, and the removal of a portion of it. This does not constitute a contract enforceable at law or in equity, or upon which an action for damages for a breach thereof will lie. There is a motive on plaintiff's part to have the soil removed without cost, and a willingness on defendant's part to take the dirt off without charge, but an utter lack of an intention to make a binding legal contract. In the absence of any proof of an understanding that the value of the soil, or the soil itself, was offered, considered and accepted, *as a consideration* for defendant's promise to remove it, the offer and acceptance were gratuitous.—Bouvier's Law Dictionary, p. 425. The evidence does not even disclose that the plaintiff offered to give the soil to the defendant, *if it would remove it,* that is, as a consideration for so doing, nor that defendant promised to remove the soil and accept the same *as payment for so doing;* and, what the effect of such testimony might have been, it is not necessary to determine. It follows that no genuine legal mutuality of obligation or engagement was proved to support the allegations of the complaint; and there was no consideration, in law, for the promise upon which the breach is predicated.

The evidence of the alleged contract may be stated as in Anson on the Law of Contract (Eleventh English Edition), page 112:

"A offers to do X a service without reward: the offer is accepted: no action would lie if the service were not performed, because there was no consideration for the promise of A."

Parsons also says, in vol. 1, p. 486 (9th ed.) :

"If one promises to teach a certain trade, this is a consideration for a promise to remain with the party a certain length of time to learn, and serve him during that time; but, without such promise to teach, the promise to remain and serve, though it be made in expectation of instruction, is void. The reason of this is, that a promise is not a good consideration for a promise unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement."

This disposes, also, of appellee's contention of a promise for a promise as the consideration.

"A promise to make a gift lacks consideration and is unenforcible."—9 Cyc., 318. As defendant could not enforce the gift of the soil from the plaintiff, she could not enforce defendant's promise to remove it.

In *Smith & Smith's case* (K. B.), 3 Leonard, 88 (decided in 1583), Keener's Cases on Contracts, vol. 1, p. 338-9, Lambert Smith, executor of Thomas Smith, deceased, sued John Smith on a promise John made to Thomas to "procure the assurance of certain customary lands" to one of testator's children "in consideration that the testator would commit the education of his children and the disposition of his goods after his death during the minority of his children, for the education of his children to him," (John), and Wray, C. J., said:

"Here is not any benefit to the defendant that should be a consideration in law to induce him to make this promise, for the consideration is no other but to have the disposition of the goods of the testator *pro educatione liberorum.*"

The theory of the appellee, that the damage arising from the breach is a sufficient consideration for the contract, is wholly untenable. If such loss or damage was

sufficient to constitute a consideration, then a mere naked promise on the part of A to pay B a sum of money and an acceptance of such a promise on the part of B and a subsequent failure and refusal of A to comply with the promise would be a valid contract enforceable at law, because B was damaged and suffered a loss by A's failure to pay the sum of money promised. A promise, even of a thing of value, which can be enforced, must be made in consideration of a like promise.—*Gutheil v. Schmidt*, 8 Colo. App., 71, 44 Pac., 853; *Stiles v. McClellan*, 6 Colo., 89.

Neither can any of the following be accepted as a consideration, as contended by appellee.

The failure of defendant to keep its promise and to remove all of the soil was not a loss or detriment to the promisee that entered into the contract *as a consideration*, but only arose from the failure to perform. Of course, a nominal loss, at least, is presumed to arise upon the breach of any contract, but this does not arise until the breach occurs, and the breach cannot occur until after the contract is made, hence it cannot be looked upon as a reason or consideration for the contract.

"It makes no difference that one to whom a naked promise was made has suffered through relying or acting upon it. The detriment to the promisee which suffices as a consideration for a contract must be a detriment on entering into the contract, not from the breach of it."— 9 Cyc., 316; *Ridgway v. Grace et al.*, 2 Misc., 293, 21 N. Y. Supp., 934.

In *Casserleigh v. Wood*, 119 Fed., 308, 311, 56 C. C. A., 212, 215, the court said:

"Whether a contract rests upon a valuable consideration or otherwise must be determined by conditions that exist when it is made."

Defendant's refusal to remove the soil must not be confounded with the agreement itself.

"An expectation of results often leads to the formation of a contract, but neither the expectation nor the result is 'the cause or meritorious occasion requiring a mutual recompense in fact or in law.'' ''Nothing is a consideration that is not regarded as such by both parties.'' —*Philpot v. Gruninger*, 14 Wall., 575; 20 L. Ed., 743; Keener's Cases on Contracts, 319, 323.

It is true that, however infinitesimal a thing may be, or may afterwards prove to be, that is offered and accepted as a consideration for a contract, it may be sufficient, if it be offered and accepted as a consideration, and not as a gift, or under a state of facts that discloses a gratuitous undertaking.

It cannot be said that the removal by the plaintiff of the rich, loose soil, from the top of that defendant was to take, was a consideration for the contract, because this was done at plaintiff's instance, for the reason that she wanted to use it, and not at defendant's request, was not spoken of at the time of the original arrangement, and would not convert a gratuitous undertaking into a legal contract. Nor can it be maintained that plaintiff's permission for defendant to have the right to enter upon the premises and remove the soil, and the surrender of possession for such a purpose, was a consideration, because this was merely incidental to, and in harmony with, the gratuitous arrangement, and would not be a real consideration if the contract had been other than gratuitous, as this would not be a thing contracted for nor in the minds of the parties as a consideration when the arrangement was made.—*Sterne v. The Bank of Vincennes et al.*, 29 Ind., 549.

Neither could plaintiff claim damage for the manner in which defendant removed part of the soil, nor for the condition in which the lots were left, because her husband

testified that he acted as her sole agent in the entire transaction, and that no claim was made for anything except the failure to remove the balance of the soil. It is true that if defendant so negligently performed its gratuitous undertaking as to cause damage to the plaintiff, she might recover, but her husband's testimony wholly eliminated this proposition.

"A gratuitous promise or undertaking may indeed form the subject of a moral obligation, and may be binding in honour, but it does not create a legal responsibility."

The motion for a non-suit, or for a directed verdict, interposed by the defendant, should have been sustained; and, therefore, the judgment is reversed, with directions to dismiss the suit.

CUNNINGHAM, P. J., dissenting.

Decided December 8, A. D. 1913. Rehearing denied February 11, A. D. 1914.