W. E. BLAIN, Appellee, v. C. A. JOHNSON, Appellant.

**BILLS AND NOTES:**  Consideration—Forbearance—Evidence. Evi
1   dence held insufficient to establish an agreement to forbear suit on a pre-existing promissory note as a consideration for the signing of the note by a third party. (See Book of Anno., Vol. 1, Sec. 9441.)

**BILLS AND NOTES:**  Consideration—Release of Existing Maker As
2   Consideration for Signature of New Signer. The court will not, in order to supply a consideration for a third party's signing a preexisting note, hold, as a matter of law, that the said signing, being without the knowledge or consent of the existing signers, (1) worked an absolute release of said existing signers, and (2) constituted the

making of a new note by the new signer, *when plaintiff was pressing his action on a theory flatly contradictory to such a holding.*

Headnote 1:   8 C. J. p. 1048.   Headnote 2:   8 C. J. pp. 1060, 1064.

*Appeal from Shelby District Court.*—EARL PETERS, Judge.

APRIL 9, 1926.

Action on promissory note. Plea of want of consideration. Directed verdict for plaintiff. Defendant appeals.—*Reversed.*

*E. E. Wagner* and *White & White,* for appellant.

*Cullison & Cullison* and *Bennett Cullison,* for appellee.

MORLING, J.—The sole defendant is C. A. Johnson, father of Louis E. Johnson. On March 1, 1920, Louis and wife executed to plaintiff a note and mortgage for $5,000, due March 1, 1925, with interest payable annually. The note contained no acceleration clause. The mortgage did. The defendant had nothing to do with the original transaction. He paid the interest one year, on account of his son's having a crop failure. Plaintiff called on the defendant and his wife, to get them to sign the note, about March 1, 1923. The only testimony concerning the transaction is that given by the defendant and his wife. Defendant testified:

"Q. What did he [plaintiff] say about it? A. Well, I couldn't say. He talked so much that I couldn't tell you what he did say or what he didn't say.* * * After Mr. Blain came into the house, he commenced about the interest, not being paid, and then he wanted me and my wife to sign that there note. Q. What did he say about it? A. That was all there was to it. He wanted me to sign it. I cannot say about his words; I could not tell all what he did say, * * * Q. What, if anything, did Mr. Blain say to you that he would do, if you did sign this note? A. Nothing. * * * Q. What, if anything, did he say he would do for Louis * * * your son Louis, if you signed that note? A. Nothing that I heard."

On cross-examination, defendant testified:

"Mr. Blain came to see me about the 1st of March, 1923. He told me that the interest was not paid. He told me he was going to foreclose. He didn't say 'unless some settlement was made.' The day I signed this note, Ed Blain told me that Louis hadn't paid his interest, and he told me he was going to foreclose because the interest wasn't paid. He talked foreclosure; that is all I know. He made his brags that he had money in the bank to go and foreclose and take the farm. He didn't tell me he was going to foreclose unless that interest was taken care of,—not that I know of. All I know, he was going to foreclose, and that is all I know about it. Q. And you knew he was going to foreclose unless you signed the note, didn't you? A. No. Q. Didn't he tell you he was going to foreclose unless that interest was taken care of? A. Yes, I guess. * * * I cannot exactly remember how many times Blain talked to me about the fact that my [?] interest was due, and he was going to foreclose. He came around every time the interest was due, and hounded me and my wife about it; that is all I can say. The day I signed the note, he mentioned several times that he was going to foreclose because the interest was past due; but I could not keep track of it. * * * I don't remember that Mr. Blain ever mentioned that he was going to foreclose because the note was due for failure to pay interest. Q. Did he say that, because the interest wasn't paid, he had the right to foreclose? A. Well, he talked of foreclosing so much, I could not tell. Until I signed the note, he talked a good deal about foreclosing. * * * Q. Did he talk about anything else besides this note and your signing this note, during the time he was there? A. That was all the conversation,— to get me and my wife to sign that note."

Defendant's wife testified that plaintiff asked her to sign.

"He said: 'You better sign them, and save trouble.' I said, 'No,' I wasn't going to. * * * He asked me to sign the papers, and save trouble for Louis. Each time that he asked me, I told him, 'No, sir.' * * * I didn't hear him say anything about foreclosing this mortgage."

On cross-examination, she testified:

"Q. He told you and Charlie if you didn't—he told you

to sign them, and it would save trouble for Louis? A. He told me to sign them, and I didn't know about trouble or anything else. Q. I understood you to say 'to Mr. White he told you to sign it so it would save trouble. A. I don't remember at all that he told me that again this year,—I don't know. * * * He asked me to sign, but that is all he done. * * * Q. You won't say, one way or the other, as to whether he told you why? A. I don't remember, as I was too nervous. * * * He was there three years on me, and I was home alone. I told him I would not sign my property for Louis, and when he stepped out on the porch, he said: 'Maybe some day you will sign.' ''

The defendant at this time put his name upon the note. His wife did not. On the 7th day of March, 1923, Louis Johnson sent to plaintiff the interest that was due March 1, 1923. The petition in the present suit was filed May 17, 1924, and originally asked for the full amount of the principal and interest against C. A. Johnson. The original makers are residents of South Dakota. The mortgage was set out in the petition, and the principal was claimed to be due, on account of the acceleration clause in the mortgage. The claim for the principal, however, was stricken out by the court.

The defendant pleaded want of consideration. The court directed a verdict against him. The only consideration claimed by the plaintiff in argument here is: first, that there was an agreement for forbearance; second, that the addition of defendant's name to the note was an alteration which discharged the original makers.

I. We take up first the claim of an agreement for forbearance. There is no evidence that defendant requested forbearance, or that forbearance was mentioned in terms. Plaintiff was threatening forbearance, not unless the defendant signed the note, but unless the interest was paid. Nothing was said about defendant's paying the interest, except by implication in asking him to sign the note. The interest, according to the note, was already due; so that no implication of agreement to forbear would result from signing the note. The mortgage provides that, in case of default in payment of interest, the principal,

1. Bills and Notes: consideration: forbearance: evidence.

at the option of the holder, should become due. It does not appear either that plaintiff had exercised this option or precluded himself from doing so. He did not say he would forbear, or waive his right to' enforce payment of the whole amount, or that he would not foreclose. For all that appears, unless an agreement may be implied, plaintiff might have sued or foreclosed immediately, notwithstanding defendant's having signed the note. *Queal & Co. v. Peterson,* 138 Iowa 514; *Zimbelman & Otis v. Finnegan,* 141 Iowa 358; *Green Bay Lbr. Co. v. Fredericksen,* 197 Iowa 70, 76; *Watt v. German Sav. Bank,* 183 Iowa 346; 13 Corpus Juris 348. It cannot be said, as a matter of law, that there was an implied agreement for forbearance. Whether the jury might have found an implied agreement, we need not discuss; for it is not likely that the case on retrial will be submitted on the same evidence.

II. It is argued here that the addition of defendant's name to the note was a material alteration which discharged the original makers, and that this was a consideration for defendant's signature. Plaintiff does not claim, of course, that the alteration was fraudulent. The only theory · upon which the addition of defendant's name to the note can be held to discharge the original makers, and so afford the consideration for defendant's signature, is that expressed in *Rhoades v. Leach,* 93 Iowa 337, 339, in which it is said:

2. BILLS AND NOTES: consideration: release of existing maker as consideration for signature of new signer.

"The cases are placed upon the ground that the addition of another name to a note is a material alteration, which will discharge the original parties not consenting thereto, and without inquiry whether the alteration is injurious or beneficial to them, and that the person so executing the note makes it his own, and that it is, in effect, the execution of a new note."

See *Browning v. Gosnell,* 91 Iowa 448; *Dickerman v. Miner,* 43 Iowa 508. In the latter case it is said:

"The signature of Johnson imports a sufficient consideration. For aught that appears, he knew that Miner had no knowledge of the addition to the note. The law presumes that he knew the effect of his signature would be to discharge Miner. There is no reason why he should be discharged from

his obligation voluntarily assumed. The effect of his act was to execute a new note at the time he attached his name. As the maker of such note, he should be held liable."

The plaintiff's petition, the plaintiff's cross-examination of defendant's witnesses, the plaintiff's argument in this court, and his first claim of consideration, which has been discussed, are diametrically opposed to the basic theory of consideration's resulting from the discharge of prior makers.

Plaintiff's petition alleges that, about March 1, 1920 (the date of the note), "the defendant, together with Louis E. Johnson and Malinda Johnson, executed and delivered to plaintiff" the note sued on; "that, as a part of the same transaction, the said Louis E. Johnson executed and delivered to the plaintiff a real estate mortgage," a copy of which is made a part of the petition, and which contains the acceleration clause previously noted. The petition alleges that the interest was in default, and that plaintiff thereupon elected to declare the whole amount of the note due. The original makers, so far as shown, apparently were not parties to the suit. The plaintiff, therefore, is standing upon a petition which alleges that the note is the note not merely of the defendant, but of the original signers, and that it was originally executed by all at the same time. He was claiming maturity of the principal (though the court denied his right to this, because, as we infer, defendant did not sign the mortgage) because of the provision of the mortgage forming a part of the original contract signed by the other two makers of the note.

In cross-examining the defendant, plaintiff brought out the following:

"I don't know about my deal between Louis and Ed Blain that I was to sign that note. I am ignorant of all that. I don't know whether there was any agreement between Louis and Ed Blain that Ed was to get and have my signature to the note. I don't know anything about that."

This cross-examination was conducted on the evident theory that defendant was originally to have signed the note, and therefore that the parties to it remained liable. One original signer, Louis Johnson, was called as a witness for defendant,

and was examined by both parties as to the existence of an agreement on the part of defendant originally to sign the note. He denied such an agreement. He testified that he told plaintiff, the fall before, that he would have the interest on or before March 1st. He sent the interest on March 7th, after defendant signed the note. There is no intimation that he did not expect to pay the interest, further than the inference from plaintiff's cross-examination of him that plaintiff claimed that Louis Johnson had said he "had decided to let the farm go by foreclosure," which Louis Johnson denied.

If, as plaintiff contends, the consideration for defendant's signing the note was an agreement to forbear, it could not very well have been understood that the original makers of the note and mortgage were to be discharged, and that defendant was thereby making the note his own, and in effect executing a new note. In support of this contention, plaintiff says in his printed argument here:

"It plainly appears that Blain was asking for the signature of C. A. Johnson upon the note as additional security, and that, upon the refusal of such signature, that he would declare the mortgage due, and proceed to foreclose. * * * It is true that no definite extension of time was agreed upon. * * * It seems plain that the parties contemplated, and by their language agreed, that, if the defendant signed the note as surety, plaintiff would waive his right at that time to declare the entire note due."

The tenor of the case throughout is that defendant was signing additionally with, and as surety for, and not as a substitute for, or in release of, the original makers. The record does not show further what the consideration claimed by plaintiff in the lower court was. It does not show what the court held as to the consideration, unless from his rulings on evidence it may be inferred that he held that there was an agreement to forbear foreclosure.

On this record, it seems clear that it cannot be held, as a matter of law, that either party intended or agreed, expressly or intentionally or by implication, that the original makers were released, or that defendant was making the note his own,

or in effect executing a new note. There is evidence that Louis E. Johnson did not know that defendant was going to sign the note.

"I first learned that my father signed the note for my interest towards the last of March, 1923, about three weeks after it was signed."

The other original maker, Malinda Johnson, was not a witness, and no testimony as to her knowledge was offered. It seems to us that it would be most unreasonable and incongruous and inconsistent with the entire tenor of the record and the conduct of the case by plaintiff to hold, as matter of law, that defendant signed the note without the knowledge or consent of the original makers, and to presume that he knew that the effect of his signing would be to discharge them; or to hold that it was within the contemplation of the parties, expressly or by implication, that defendant was making the note his own, and in effect executing a new note. Consideration is a matter of contract, and that which is claimed to be such must have been within the express or implied contemplation of the parties. *Fire Ins. Assn. v. Wickham,* 141 U. S. 564, 579; *Kirkpatrick v. Muirhead,* 16 Pa. St. 117, 126; *French v. Boston Nat. Bank,* 179 Mass. 404, 408 (60 N. E. 793); *Philpot v. Gruninger,* 14 Wall. (U. S.) 570; 1 Page on The Law of Contracts (2d Ed.), Section 522; *First Nat. Bank v. Shaw* (Tex. Civ. App.), 260 S. W. 309, 312; *Denver Pressed Brick Co. v. LeFevre,* 25 Colo. App. 304 (138 Pac. 434); *Burgher v. Wabash R. Co.,* 139 Mo. App. 62 (120 S. W. 673, 676); 1 Elliott on Contracts, Sections 203, 204; *Levy & Cohn M. Co. v. Kauffman,* 52 C. C. A. 126 (114 Fed. 170); *Gross, Kelly & Co. v. Bibo,* 19 N. M. 495 (145 Pac. 480, 487); 13 Corpus Juris 318, 329; *Amend v. Becker,* 37 Misc. Rep. 496 (75 N. Y. Supp. 1095); *Bragg v. Danielson,* 141 Mass. 195 (4 N. E. 622); *Insell v. McDaniels,* 201 Iowa 533.

The judgment is—*Reversed.*

All the justices concur.