HOLDER *v.* DORMAN.

BILLS AND NOTES—SUBSEQUENT INDORSEMENT—NEW TRIAL—EQUAL-
LY DIVIDED COURT.
> Order granting defendant indorser's second motion for new trial
> in action against maker and indorser of a promissory note
> on ground there had been no consideration for her subsequent
> indorsement of the note is affirmed by an equally divided court.

Appeal from Grand Traverse; Brown (Charles L.), J. Submitted October 15, 1957. (Calendar No. 47,011.) Decided December 24, 1957. Rehearing denied April 14, 1958.

Action by Jess A. Holder against Kenneth L. Dorman and Ethel Higgins, maker and indorser of note. Verdict and judgment for plaintiff. Motion for new trial granted. Plaintiff appeals. · Affirmed by an equally divided court.

*Harry T. Running,* for plaintiff.

*Livingston & Anderson,* for defendant Higgins.

CARR, J. *(for affirmance).* Plaintiff brought this action to recover on a promissory note in the sum of $6,000, without interest, executed and delivered to him by defendant Dorman on April 19, 1951. Some 2 or 3 days thereafter defendant Higgins indorsed the instrument, which on its face was payable on demand. Payment having been refused, plaintiff brought suit on November 5, 1951. Defendants filed

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Appeal and Error § 1160; 7 Am Jur, Bills and Notes § 250.

separate answers to the declaration, each denying liability and alleging want of consideration for the note in question.

Trial was had before a jury which returned a verdict in favor of the plaintiff in the sum of $6,000, on which judgment was entered under date of January 21, 1952. Thereafter defendants joined in a motion for a new trial, alleging that the verdict of the jury was contrary to the law and to the great weight of the evidence. Subsequently defendant Higgins, on June 18, 1952, filed a second motion for a new trial, alleging that she had indorsed the note after the transaction between the maker and payee had been completed as shown by the proofs, that there was no consideration for her act, that the trial judge in his charge to the jury failed to properly submit the issues affecting her liability, and that the charge as given was erroneous in that it assumed that if the maker was liable she, as indorser, was also liable. The further claim was advanced that the indorsement was void because made on Sunday.

Plaintiff filed answers to said motions. The record indicates that the matter was submitted for determination in June, 1952, but for some reason or reasons not appearing in the record no decision was rendered until February, 1956. An order was then entered granting a new trial. In said order it was stated that the jury had not been properly instructed with reference to the claims of defendant Higgins and that a new trial should be granted "in the interest of substantial justice." From the order so entered, plaintiff, on leave granted by this Court, has appealed.

It may be noted at the outset that there are material contradictions in the testimony given on the trial by the parties to the case. It fairly appears, however, that the note was executed and delivered by defendant Dorman to the plaintiff as a part of an

attempt to improve the financial situation of the Boardman Sales & Service Company, a corporation transacting business in Traverse City. The issued stock of said corporation was held by plaintiff, defendant Dorman, and Howard Geyer. An arrangement was worked out pursuant to which plaintiff's stock was sold to a party desiring to acquire a 1/2 interest in the corporation, for the sum of $15,800. The testimony of plaintiff indicates that the corporation gave him 300 shares of stock to enable the transaction to be executed, and that Geyer also sold part of his stock to the purchaser in order to give the latter the interest that he sought to acquire. Payment for plaintiff's stock was made by the purchaser by delivering 2 checks, one in the sum of $800 being payable to plaintiff personally and the other a bank check for $15,000. It was the agreement of the parties that plaintiff should retain the smaller amount and that the sum of $15,000 should be turned over to the corporation to enable it to continue in business.

Immediately following the receipt by plaintiff of the check for $15,000 defendant Dorman, who was the president of Boardman Sales & Service Company, requested that said check be delivered to him in order that he might deposit it to the credit of the corporation to the end that certain claims might be paid. It is a fair inference from the testimony that plaintiff declined to turn over the check unless some arrangement was made whereby he might be reimbursed, at least in part, for money that he had invested in the business. He testified on the trial that defendant Dorman suggested the giving of a mortgage on his house and that he (plaintiff) replied that he would be satisfied with a note. In consequence, the instrument on which the present action is based was prepared, signed by defendant Dorman, and delivered to plaintiff. Thereupon the check for $15,000

was turned over to Dorman and was deposited to the credit of the corporation, pursuant to the agreement of the parties.

Plaintiff testified on the trial that at the time of the transaction in which the note was delivered and accepted Dorman assured him that defendant Higgins would indorse the instrument. The stage of the transaction when such conversation occurred does not appear. Neither is there proof, other than by possible inference, that plaintiff insisted on the liability of an indorser being added to that of the maker. He claimed, however, that at some time in the course of his conversation with defendant Dorman he was led to believe that defendant Higgins would indorse on presentation of the note to her.

The testimony of defendant Dorman was at variance with that of plaintiff. Said defendant claimed that he had loaned money to the company, and that, in substance, the agreement between the parties at the time the note was executed and delivered was that payment depended on getting the company in a satisfactory condition and said defendant thereby enabled to make payment. The following testimony fairly suggests his position with reference to the reason for the execution of the note and for procuring the subsequent indorsement by defendant Higgins:

"I had to get—one of the contingencies was I would have to be repaid what money I had loaned to the company, in order to reimburse Mr. Holder for any amount he might claim.

"*Q.* Did you discuss it with Mr. Holder at that time?

"*A.* Yes.

"*Q.* Had you discussed this with Miss Higgins prior to the time you executed this note to Mr. Holder?

"*A.* No, I hadn't.

"*Q*. When did you first talk it over with Miss Higgins?

"*A*. A couple of days later.

"*Q*. Well now, on the matter of an indorser what, if anything was said or discussed at the time you executed this note, about getting an indorser on the note?

"*A*. The only reason they wanted a third party on the note was to establish the fact—there had been some talk about how this note would be paid—if and when the company would come back on its feet, or any portion of it—

"*Q*. I will ask you this question: did they demand an indorser on the note; did Mr. Holder demand an indorser on the note?

"*A*. They wanted to have someone who had knowledge of the deal other than myself.

"*Q*. Is that the only reason Miss Higgins was asked to put her name on this note?

"*A*. That is right."

Defendant Higgins, called for cross-examination by counsel for the plaintiff, testified that she had no interest in the Boardman Sales & Service Company but that she was a friend of the parties, and that because of her interest in them she did not wish to see the company fail. She testified also that she knew none of the circumstances that took place at the time of the execution and delivery of the note, that plaintiff and defendant Dorman came to her home on a Sunday afternoon, that she was told that they wanted her to sign the note as an indorser, that there was some discussion with reference to the payment, including a statement by plaintiff that "It will be some time before we can do anything about this," and that there was no discussion of the circumstances under which the note had been executed and delivered. It does not appear from her testimony that she knew anything about the transaction involving the execution and delivery of the note and

the turning over of the bank check for the benefit of the corporation prior to the time that the parties came to her home.

It was conceded by plaintiff in his testimony that he had possession of the note at the time of the visit to defendant Higgins, and that he submitted it to her. He further testified that he and his wife were in the vicinity, and that he did not make said visit for the purpose of getting the indorsement, but that the call was rather casual in nature. He later testified that the purpose of his visit was to have the note indorsed, and that he did not know that defendant Dorman was "going to be there."

It is significant that plaintiff made no attempt to contact defendant Higgins on April 19, 1951, to ascertain if she would indorse the Dorman note, but accepted it, and delivered the check for the purpose indicated, that is, to permit the continuance of the corporate business. Neither is it specifically claimed by him that there was any agreement that the carrying out of the arrangement should be contingent on the indorsement by defendant Higgins. The facts fairly established by the record suggest that the transaction in which the note was given was fully completed before the indorsement was procured.

Without discussing at length the charge given by the trial judge to the jury in submitting the case for decision it may be noted that the primary question submitted was whether, as between plaintiff and defendant Dorman, there was consideration for the giving of the note. In effect, the jury was charged that if such consideration existed plaintiff was entitled to a verdict against the defendants. Presumably it was this charge that the trial judge, in passing on the motions for a new trial, considered to have been erroneous. On behalf of appellant attention is called to the fact that specific charges with reference to the liability of an accommodation indorser under

circumstances disclosed by the record were not requested by defendants. It is urged that failure to cover this phase of the controversy in the charge could not be regarded as a proper reason for granting a new trial. On behalf of appellees it is insisted that the issues fairly presented on the record with reference to the liability of the respective defendants should have been submitted and explained to the jury. We think there is much force in the argument but, in any event, if the charge as given was erroneous the effect of the failure to request specific instructions does not call for discussion.

The primary question at issue in the case is whether the proofs introduced on the trial were of such character as to establish as a matter of law that consideration for the note as between plaintiff and defendant Dorman imposed liability on defendant Higgins on the theory that she should be regarded as a party to the transaction between the maker and the payee. Was the agreement between said parties conditioned on procuring the indorsement? Was the transaction as between plaintiff Holder and defendant Dorman fully executed prior to the time that defendant Higgins became a party to the note? As suggested, the primary question is whether the proofs introduced on the trial required submission to the jury of the indicated issues.

In 10 CJS, Bills and Notes, § 145, p 600, certain decisions dealing with the questions at issue here are summarized as follows:

"Generally, the undertaking of a person signing, or becoming a party to, a negotiable instrument after its execution and delivery must be supported by some new or additional consideration, as the original consideration for the instrument is insufficient to sustain such an undertaking. This rule applies, however, only when the transaction of which the bill or note forms a part has been completely executed

or consummated prior to the addition of the new signature. The subsequent signature is regarded as being made at the same time as the note, so as to constitute a part of the same transaction, and be supported by the same consideration, where it is added pursuant to a prior agreement between the maker and payee which has been relied on by the latter, even though the person subsequently adding his signature does not know the terms of the principal contract."

In support of the final statement in the language quoted is cited *Van Houten* v. *Van Houten,* 202 Iowa 1085 (209 NW 293). There defendant signed a note with her husband, he having agreed with the payee that she would execute it with him. When the instrument was presented to her she affixed her signature. It was her claim on the trial that the agreement in connection with which the note was given was completed before she signed, and that she did not know all the details of the transaction although to some extent she had participated in carrying on the business of her husband, in connection with which the note was given. In sustaining a judgment against her it was pointed out that the fact that she waived inquiry as to all of the provisions of the agreement was not material. The court found under the proofs that the agreement was not complete, or to become effective, until she signed the note. The testimony in this respect was not in dispute. In reaching such conclusion the court distinguished the case on the basis of the facts involved from *Blain* v. *Johnson,* 201 Iowa 961 (208 NW 273); and *Ellis* v. *Clark,* 110 Mass 389 (14 Am Rep 609).

In *Blain* v. *Johnson, supra,* it appears that a note was signed by the defendant subsequent to its execution and delivery, such signing being apparently on the urging of the plaintiff. It was held that there was no consideration for the claimed assumption of liability on defendant's part, and a judgment in

favor of the plaintiff was reversed. In the Massachusetts decision cited, the proofs indicated that plaintiff sold wood under an oral agreement with Edwin R. Paul, taking a note therefor. After the wood had been cut and some of it removed, plaintiff demanded that security for the payment of the note be given. He also threatened to stop removal of the wood from the premises on failure to comply with such demand. The result was that defendant wrote his name on the back of the note. Plaintiff had verdict in the trial court but on appeal the judgment was reversed. The appellate court found that under the arrangement between plaintiff and Paul the title to the wood had vested in the latter, and plaintiff had no authority to forbid its removal. In reaching the conclusion indicated, it was said, in part (p 392):

"The defendant, as the jury were rightly instructed, having put his name on the note after it had been delivered to the plaintiff, and not as part of the original contract, could not be held liable without proof of some new and independent consideration. That consideration need not be a benefit to the defendant. Any loss or disadvantage to the plaintiff, by giving up some right against a third person, or agreeing to abandon or delay enforcing some right against him, would be sufficient. But the consideration or motive of the promise must be known to the promisor. The minds of the parties must meet and agree upon the terms of the whole contract, including the promise on the one side and the consideration for it on the other."

In *Devitt* v. *Foster*, 159 Miss 687 (132 S 182, 74 ALR 1092), it was held that accommodation indorsers without notice of a prior agreement between maker and payee to procure such indorsements after acceptance were not bound because of a lack of consideration. In discussing the matter it was said by the Mississippi court (pp 695, 696):

"In the case of *Messenger* v. *Vaughan* [syllabus], 45 Mo App 15, it was held that 'the promise, of the original maker, at the time of the execution and delivery of the note to secure the name of the subsequent maker, will not operate as a consideration for such subsequent signing, when the subsequent maker at the time of such signing was wholly ignorant of such promise;' while in the case of *Howard* v. *Jones* [syllabus], 10 Mo App 81, it was held that 'where one loans money and takes a note therefor upon the maker's promise of M.'s indorsement thereon, M.'s subsequent indorsement, without any knowledge of the facts or the promise, is without consideration.'

"In the case of *Ellis* v. *Clark*, 110 Mass 389, 392 (14 Am Rep 609, 612), it was held that: 'The consideration or motive of the promise must be known to the promisor. * * . * An agreement between the plaintiff and Paul, by which the former agreed to forbear to sue the latter, would not be a consideration for the defendant's promise, if not made at his request or communicated to him at or before the time of the making of his promise.' In the case of *Sawyer* v. *Fernald*, 59 Me 500, it was held that where the maker of a note in pursuance of an agreement with the payee secures the signature of an indorser after the execution and delivery of the note, the indorser is not bound merely by reason of such agreement, if he signed in ignorance thereof. In 8 CJ, p 212, it is said that 'a consideration moving from the holder to the maker or to the principal debtor may, however, be a sufficient consideration for a subsequent indorsement for the maker's accommodation, provided it is known to the indorser or to the surety when he signs the instrument.'

"It seems clear that one who indorses a note in pursuance and consummation of a prior agreement between the maker and the payee, of which he has knowledge, participates in the original consideration for the note, and is therefore bound, but that an indorser will not be bound merely because of such an agreement between the maker and the payee, if he

has no knowledge thereof at the time he signs. Consequently we are of the opinion that the court below committed no error in holding that the appellees were not liable merely because of the prior agreement between Devitt and his wife that their indorsement would be secured, since the evidence shows without conflict that they had no knowledge of this prior agreement at the time they indorsed the note."

The foregoing case is found in 74 ALR 1092, followed by an annotation (p 1097) in which decisions dealing with the matters at issue in the case at bar are cited. After quoting from 3 RCL, p 928, it is said:

"And so it is generally held that, where one becomes an accommodation indorser after a note has been delivered and accepted, a new consideration is necessary, the original consideration between the original parties not being sufficient. *Hood* v. *Robbins & Smith* (1893), 98 Ala 484 (13 S 574); *Jackson* v. *Lancaster* (1925), 213 Ala 97 (104 S 19); *Parlin & Orendorff Plow Co.* v. *Evenson* (1924), 158 Minn 348 (197 NW 489); *Bedrosian* v. *Der Manouelian* (1926), 48 RI 40 (134 A 851).

"And though there may have been a prior agreement between the maker and payee, yet, if the indorser has no notice or knowledge thereof, the rule is the same. *Devitt* v. *Foster* (reported herewith), *ante,* 1092. See *Sawyer* v. *Fernald* (1871), 59 Me 500."

Attention is further directed in the annotation to a number of cases holding that the indorser of a note in accordance with an agreement of which he has knowledge is bound, apparently on the theory that he by his indorsement makes himself a party to the original undertaking.

The case of *Steers* v. *Holmes,* 79 Mich 430, is not at variance with the principles recognized in the foregoing quotations. There suit was brought on a

promissory note bearing the signatures, as makers, of 4 individuals, the last signer being the defendant Andrew J. Holmes. The latter defended on the ground that he had signed after the note had been executed and delivered by the other defendants. This Court, in affirming the judgment in plaintiff's favor, concluded from the record before it that the agreement involving the execution of the note was consummated by the plaintiff in reliance on defendant Andrew J. Holmes signing the obligation. The latter admitted that his brother, a codefendant, had asked him to do so and that he had replied that "he would see about it." When plaintiff brought the note to him defendant was reminded of his brother's request, whereupon he took the note and signed it without comment.

In discussing the situation presented, it was said (p 439):

"Knowing, as he did, that plaintiff expected him to sign the note as security for the payment of the sum mentioned therein, and signing it as he did, his act furnished a sufficient consideration; and it would make no difference in his liability upon it whether he signed it before or after the property passed."

The conclusion reached is in accord with what appears to be the weight of authority on the subject.

Under the contradictory testimony in the case at bar defendants were entitled to have the factual issues involved presented to the jury for determination under proper instructions from the court. We think the trial judge was correct in his conclusion that the charge as given was erroneous and that in the interest of justice a new trial should be granted. The unexplained delay in the decision on the motions of the defendants does not alter the situation. No claim is made that the trial court lost jurisdiction in the premises, or that the parties making said mo-

tions were not entitled to have them determined. Neither is there any showing, nor any claim, that appellees were responsible for the delay.

The claim that defendant Higgins' indorsement was void because made on Sunday, first raised in her motion for a new trial, does not require extended discussion. The trial court did not pass thereon, and it appears from the record that the testimony as to the date of indorsement is contradictory. The note bears the date April 19, 1951, which was on a Thursday. While defendant Higgins testified that she indorsed it on Sunday, other witnesses, including defendant Dorman, indicated that such date may have been "a couple of days" after the execution and delivery. Plaintiff also stated that the matter was taken up with defendant Higgins 2 days after the signing of the note. On the record it appears that the actual date of indorsement was a factual matter in dispute. As before noted, the question was not raised in circuit court prior to the second motion for a new trial.

The order of the trial court from which the appeal has been taken is affirmed, with costs to appellees.

DETHMERS, C. J., and SHARPE and KELLY, JJ., concurred with CARR, J.

BLACK, J. (*for reversal*). This case arrives via application for leave to review an order granting motion for new trial. When the application came here it was assigned to the writer for study, and due report with recommendation, according to our practice. My report favoring grant was summarized on the occasion this way:

"If in the court below it takes more than 4 years after jury trial to have a motion for new trial decided, we might as well bring the case here to see if we cannot prod it to final judgment."

As to the facts:

Plaintiff declared December 6, 1951, on a promissory note executed by defendant Dorman as maker and defendant Higgins as indorser. January 7, 1952, through then counsel for both (attorney James R. Zerafa), the defendant maker and the defendant indorser filed substantially identical answers to such declaration, each affirmatively alleging that the note was given without consideration as between payee and maker. No defense, apart from the one common to each answer as presently quoted, was pleaded and supported by defendant Higgins. Each of the indorser-defensive questions my Brother considers at length in his opinion* remained foreign to the case until an amended motion for new trial was filed and, even to this day 6 years later, each remains dehors the pleadings.

Here is the pleaded and as yet unamended affirmative defense of defendant Higgins:

## "Affirmative Defense

"1. Upon information and belief, defendant Ethel Higgins alleges that on or about the 17th day of April, 1951, at which time plaintiff was secretary and treasurer of the Boardman Sales & Service Co., a Michigan corporation, he sold all of his stock in said corporation to a third party, and resigned as secretary and treasurer of said corporation; that thereafter plaintiff had a discussion with defendant Dorman, and that as a direct result of said discussion defendant Dorman promised plaintiff that if he sold his stock in said Boardman Sales & Service

---

* Whether defendant Higgins was an accommodation indorser; whether legal effect of the note was by agreement of payee and maker conditioned on procuring the Higgins indorsement; whether the transaction as between payee and maker was fully executed prior to obtaining the indorsement by Higgins; whether the note was executed and delivered prior to the Higgins indorsement; if so, whether some new or additional consideration was required to make the Higgins indorsement legally effective, and whether defendant Higgins had no notice "of a prior agreement between maker and payee to procure" her indorsement.

Co., at a large profit he would share such profit with plaintiff, whereupon without any consideration, defendant Dorman executed said note as evidence of good faith in the agreement. That defendant Dorman has not sold his stock in said corporation, but still owns the said stock.

"2. Defendant Ethel Higgins further alleges that by reason of the premises the note was without consideration, and further alleges that there was no performance of the condition precedent necessary to give plaintiff a right to demand payment of said note."

Here is the trial judge's entire instruction to the jury on the subject of want of consideration as pleaded:

"Now, it is the claim of Mr. Holder in this case that he has a right to recover this $6,000 on demand, and that that amount is presently due him. It is the claim of the defendants, Mr. Dorman and Miss Higgins, that there was no consideration for the giving of the note.

"Now, they must prove that there was consideration for the note. The word consideration is defined as something of value passing from one person and a detriment accruing to another person out of the same transaction. That is, one party gives something and the other party gets something, and the one that gives doesn't have it any more, so he has passed the value over to the other party. They claim, as a defense, that there was no consideration for the giving of this note. So in each of these actions of debt, and any lawsuit in a similar situation as this, it is necessary the plaintiff prove his case by the fair preponderance of the evidence, and must prove the contract between the parties, that he performed his part of the contract in accordance with the terms and, also, the amount due under the terms of the contract. They must prove that there was consideration for the giving of the note. If Mr. Holder, the plaintiff, fails to prove any one of those elements

by the fair preponderance or weight of the evidence, then he does not recover at your hands, and cannot recover as a matter of law, if you so determine.

\*     \*     \*

"The question for you to determine in this case is whether or not there was consideration for the giving of this note. If there was consideration for the giving of this note; that it passed from Mr. Dorman to Mr. Holder, and if Mr. Holder gave something of value to Mr. Dorman; if he had something coming from Mr. Dorman, and Mr. Dorman got something of value from Mr. Holder, then consideration is established.

"The note, on its face, presumes there was consideration. It is up to you to determine whether or not there was actual consideration. If you find there was consideration for the giving of the note, then you should find in favor of Mr. Holder. If you find there was no consideration for the giving of the note —each of these matters, you understand, being determined by the fair preponderance of the evidence —then your judgment should be one of no cause for action.

"In other words, after a determination of all the evidence in this case, and leaving sympathy and everything entirely out of it, as I know you will, your verdict may be 1 of 2 verdicts; either we find in favor of the plaintiff in the amount of $6,000, or we find no cause for action.

"You may elect your foreman, and he will answer for you when you return to the courtroom. *Are there any specific instructions either of you gentlemen wish to have mentioned to the jury?*

"*Mr. Running* (Plaintiff's counsel) : *No, sir.*

"*Mr. Zerafa* (Defendants' counsel) : *No, sir.*

"*The Court: Both sides being satisfied with the charge, you may swear an officer.*"

It will be noted from that which the present writer has italicized that neither party preferred requested instructions. The jury, following due deliberation,

returned a verdict for plaintiff, the record of which appears as follows:

"*The Clerk:* Members of the jury, have you agreed upon a verdict? If so, who will speak for you?

"*The Forman:* We have.

"*The Clerk:* For whom do you find?

"*The Foreman:* We find a verdict in favor of the plaintiff, Mr. Holder, for the amount of his loan.

"*The Clerk:* Members of the jury: Listen to your verdict as recorded: You do find in favor of Mr. Holder—so say you, Mr. Foreman?

"*The Foreman:* Yes, I do.

"*The Clerk:* So say you all, members of the jury?

"*The Jurors:* We do."

Trial counsel for the defendants (attorney Zerafa) thereupon filed in behalf of both a motion for new trial. This first motion for new trial was filed February 11, 1952. It alleges no criticism of the court's charge and confines all assignments to an attack on the jury's verdict in light of the evidence.

June 18, 1952, new counsel for defendant Higgins (attorney John F. Livingston) filed an amended motion for new trial. This amended motion raised, for the first time, the following question:

"2. That the court erred in failing to instruct the jury on the pertinent issues concerning the liability of the defendant, Ethel Higgins, but the instructions instead were based upon the erroneous assumption that said Ethel Higgins was liable if the maker of the note, defendant Kenneth L. Dorman, was liable."

The motion proceeds on the quoted premise to criticize the trial judge's jury instructions set forth above.

February 14, 1956,—more than 4 years after trial and entry of judgment—the trial judge granted the

amended motion for new trial, assigning reason for such action as follows:

"This court having considered the motion for new trial, the briefs in support thereof and against the granting of said motion, and having obtained and read the transcript of the entire testimony given at said trial, which fails to disclose that this court specifically instructed the jury as to the liability of and proofs required to establish the liability of an accommodation indorser of a negotiable instrument, and having instructed the jury that there was 1 of 2 verdicts the jury could bring in at the conclusion of their deliberation; whereas, it is apparent, as a matter of law, it was within the province of the jury to have brought in a verdict in favor of the plaintiff and against defendant Dorman, and a verdict of no cause for action as to the defendant Ethel Higgins, and it therefore appearing to this court that in the interest of substantial justice the motion for new trial should be granted."

*First:* My Brother says "that the *primary* question submitted was whether, as between plaintiff and defendant Dorman, there was consideration for the giving of the note." He goes on to say: "In effect, the jury was charged that if such consideration existed plaintiff was entitled to a verdict against the defendants." I must say with emphasis that the *sole* issue in the case—not the primary one—was whether, as between plaintiff and defendant Dorman, there was consideration for the giving of the note (see the quoted pleading). With equal force, I am constrained to add that the instructions defendant Higgins tardily criticizes were correct for the case as pleaded and that the triable issue was properly submitted thereby. Every one present at the trial thought so and, considering that which was recorded at conclusion of the trial judge's jury instructions, pretty well said so. We need but add that issues

are made by and tried on pleadings in our circuit courts and that originally pleadable theories of recovery or defense are not reservable for consideration later, on motion for new trial or otherwise (*Fitzgerald* v. *Bixler,* 350 Mich 688).

*Second:* Now let us suppose that defendant Higgins had timely preferred an instruction or instructions addressed to the slugabed questions she has brought up by motion for new trial. Would it have been error on the part of the trial judge to refuse such request or requests absent amendment of the answer of defendant Higgins? I think the question answers itself. No party may of right introduce new issues or trial-fresh defensive theories, by request for specific jury instructions, unless and until such new issue or theory has theretofore come to judicial consideration by an original or amended pleading. Here the parties squared off before court and jury to settle the sole issue as made; that of presence or absence of consideration for the giving of the note as between payee and maker. Defendant Higgins, as indorser, pleaded that issue and stood thereon throughout the trial. It was decided against her, as well as against the defendant maker, by the jury's verdict. No error affected or induced that verdict. The real error here was that of grant of a thoroughly groundless motion for new trial.

Any litigant, and surely the plaintiff holder of an unpaid negotiable instrument which imports consideration on its face, should be able to obtain an expeditious and final determination for or against his pleaded right. The very honor of the judicial process is at stake when judicial officers countenance or permit otherwise. "Some concession must be made to the shortness of human life" (Foreword, Model Code of Evidence, American Law Institute, p 3), when a court assumes responsibility, on due invocation of its assigned function, for timely adjudication.

Here, and if the order for new trial is permitted to stand, the parties on past performance below may not know until more years expire whether this note should or should not be paid by the maker and indorser thereof. Since this motion for new trial was quite groundless; since no question of judicial discretion is advanced, and since we are striving to prevent the rule of Jarndyce *v.* Jarndyce* from taking firm hold in this State, I think we should reverse the order granting new trial and order reinstatement of the judgment which, testing it by such motion, the signers of this opinion find was properly entered 6 years less 1 month ago. Plaintiff should, of course, have costs.

SMITH, EDWARDS, and VOELKER, JJ., concurred with BLACK, J.

---

* See reference to Jarndyce in *Continental National Bank* v. *Gustin,* 297 Mich 134, 146. Jarndyce was characterized in Dickens' Bleak House, ch 1, this way:

"The little plaintiff or defendant, who was promised a new rocking-horse when Jarndyce and Jarndyce should be settled, has grown up, possessed himself of a real horse, and trotted away into the other world. Fair wards of court have faded into mothers and grandmothers; a long procession of chancellors has come in and gone out; the legion of bills in the suit have been transformed into merely bills of mortality; * * * but Jarndyce and Jarndyce still drags its dreary length before the court, perennially hopeless."