GEORGE STEERS v. ANDREW J. HOLMES, IMPLEADED
WITH SIDNEY STEARNS ET AL.

*Bills and notes—Consideration—Evidence—Practice in circuit courts
—Entry of default—Want of affidavit—Appeal.*

1. A bargain for the sale of personal property was consummated by
the vendor upon the expectancy that a brother of the vendee
would sign his note, given for a part of the purchase price, of
which fact the brother had notice, having been asked by the
vendee if he would sign the paper, and, while not agreeing to
do so, having answered "that he would see about it." After
the note was signed by the vendee, the vendor took it to the
brother, and asked him to sign it, saying, "I suppose your
brother spoke to you about this," and the brother signed the
note without making any answer; and it is held that there was
a sufficient consideration for such signing, and that it was
immaterial as affecting his liability on the note whether he
signed it before or after the delivery of the property, and that,
if necessary to give effect to his engagement, he will be con-
sidered as having placed his name on the note at the time it
bears date.  *Moies v. Bird,* 11 Mass. 436, 439; *Robbins v.
Brooks,* 42 Mich. 62.

2. The Court will take judicial notice of the failure of a defendant
to plead, and the entry of his default without filing an affidavit
showing such failure cannot be taken advantage of on error.
*Leonard v. Woodward,* 34 Mich. 514.

3. Four joint defendants, in a suit upon a promissory note, appeared
generally by the same attorneys. Three of the defendants did
not plead, and the fourth defended the suit alone. On the trial
a judgment was rendered against all of the defendants, the
default of one of whom in not pleading, although due for six
months at time of trial, had not been entered. No objection was
made on account of such non-default until the case was ready
to be submitted to the jury; and it is held that such default
should have been entered *nunc pro tunc,* and will be so
entered by the appellate court, to save the verdict and judg-
ment, under How. Stat. § 7636.

4. The reliance of a vendor upon the signature of a third party,
who signs the vendee's purchase-price note as a surety or joint
maker, and without which signature the vendor would not

have parted with his property, is a sufficient consideration for such signing, even if made at the sole request of the vendor.[1]

5. Where in a suit upon a promissory note given by a vendee for the purchase price of the property, and signed by three other defendants as joint makers, one of the questions at issue was whether the signature of one of said three defendants was obtained prior to the delivery of the note and property, evidence is admissible of what took place between the vendor and vendee at the time the note was made, and of the arrangement as to who should sign it, as bearing upon the probabilities of the transaction.

Error to Kalamazoo. (Buck, J.) Submitted on briefs January 15, 1890. Decided February 20, 1890.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion

*Osborn & Mills,* for appellants.

*O. T. Tuthill,* for plaintiff.

Morse, J. This is an action brought upon a promissory note reading as follows:

"$1,250.00.                                         Dec. 18, 1885.
"For value received, I hereby promise to pay George Steers or bearer twelve hundred and fifty dollars on or before the 18th day of September next, with interest.

◆      "Sidney Stearns.
"H. A. Holmes.
"A. E. Stearns.
"A. J. Holmes."

There were two indorsements of payments on the same, —$155, January 4, 1886, and $100 November 19, 1887. These payments were made by Sidney Stearns.

The defendant Andrew J. Holmes alone pleaded to the declaration. His plea was the general issue, under which he gave notice that, if he ever signed the note, he did so at plaintiff's request, after the same had been executed and delivered by his co-defendants, and without their

---

[1] See *Averill v. Wood,* 78 Mich. 343 (head-note 5).

knowledge, assent, or request, and that he did so without any consideration whatever, and is not liable thereon.

Sidney Stearns and A. E. Stearns were served with process, and defaulted. Hiram A. Holmes appeared by attorney, but did not plead. No default for not pleading was entered against him. Upon a trial in the Kalamazoo circuit court, before a jury, Andrew J. Holmes alone defending, verdict was rendered and judgment entered against all of the defendants for $1,265.34.

The first objection is that the judgment is irregular and void as against all of the defendants, for the reason that the default of the defendants A. E. Stearns and Sidney Stearns was taken irregularly,—no affidavit being filed that no plea had been entered or received by plaintiff or his attorneys,—and for the further reason that no default had been entered against the defendant Hiram A. Holmes. The defendants Stearns appeared generally, by the same attorneys who defended the suit for Andrew J. Holmes, and who also appeared for Hiram A. Holmes. They were defaulted December 10, 1888, and the default was made absolute June 21, 1889. Failure to file an affidavit for default cannot be taken advantage of on error. *Leonard v. Woodward,* 34 Mich. 514. See, also, *Elliott v. Farwell,* 44 Mich. 186 (6 N. W. Rep. 234); *Bogue v. Prentis,* 47 Id. 124, 126 (10 N. W. Rep. 136).

As to the defendant Hiram A. Holmes, he was plainly in default for not pleading. No objection was made to going to trial because he had not been defaulted. He had appeared, and was before the court. He could have been defaulted at any time for six months before the trial. No objection was made as to the shape of the record as against him until the case was ready to be submitted to the jury. Under the circumstances, we think his default should have been entered *nunc pro tunc,* and we are authorized to do so now, to save the verdict and

judgment, under the statute. This is in accordance with the right and justice of the matter in the premises, and does not alter the issue in the suit. How. Stat. § 7636.

The note in suit was given in payment for cows, fodder, and other things then being upon a farm owned by Judge Sherwood, near the city of Kalamazoo. The claim of the plaintiff was that the defendant Sidney Stearns, who purchased the property, agreed to have the other three defendants sign the note with him, and that all of them did sign the same before the property changed hands; and the note was drawn at Judge Sherwood's house on the evening of the day of its date, and was there signed by Sidney Stearns, and that the other three defendants signed it the next morning, and that he did not turn over the property until the note was signed by all of them.

The defendant Andrew J. Holmes contended, and gave evidence tending to show, that he had no arrangement with the other defendants to sign the note; that he did not sign it until it had been signed by the others, and delivered to plaintiff, and not until defendant Sidney Stearns had been in possession of the property for several days.

It appeared from the testimony of both plaintiff, and defendant Andrew J. Holmes, that the plaintiff was in possession of the note at the time said Holmes signed it, and presented it to Holmes for his signature. The evidence failed to show that there was any express agreement between said Holmes and the other defendants that he should sign the note; but the plaintiff testified that Sidney Stearns told him that Holmes would sign it, and that he informed Stearns that he would not part with his property until Holmes did sign. Stearns let him have the note to get Holmes' signature. Plaintiff took the

79 MICH.—28.

note with the understanding that he was not to accept it unless Holmes signed, and went to him, and said:

"Your brother, I suppose, spoke to you about signing this note."

Holmes made no reply, but took the note and signed it.

The court fairly submitted the two theories to the jury. He instructed them as follows:

"Now, if you find—to make it more specific—that, when this note was drawn and signed by Sidney Stearns, there was no understanding and agreement on the part of Dr. Holmes with the other defendants that he was to sign the note with them, and that the payee did not accept the note as signed, but merely took it into his possession, temporarily, in order to procure the other signers, and that he did not turn over this personal property to Sidney Stearns until after all the others had signed it, then your verdict should be for the plaintiff."

"Now, on the other hand, as I have indicated to you, gentlemen, if this note was made out and signed by Sidney Stearns, or Sidney Stearns and either of the two next defendants, and passed over to Steers as a fully-executed note, and he thereupon delivered over the personal property which this note was given for to Mr. Sidney Stearns, and he took possession of it, and then afterwards Mr. Steers carried this note to Dr. Holmes,—A. J. Holmes,—and he signed his name to it, that signature was utterly void. It was without consideration, and it would be of no consequence; and your verdict should be for the defendant."

To support the contention of the defendant Andrew J. Holmes, Sidney Stearns testified in his behalf that he never asked Holmes to sign the note, and never expected that he would sign it, nor did Holmes ever promise him that he would do so; that he did not know until six months afterwards that it was so signed. To meet this, the plaintiff and Judge Sherwood were permitted to testify to what took place at the latter's house when the note was drawn,—Sidney Stearns being present and sign-

ing the note there,—and what was said between the plaintiff and said Sidney Stearns at that time as to the delivery of the note, and who was to sign it as sureties. This was objected to—

1. On the ground that the defendant Andrew J. Holmes was not present, and could not be bound by what took place there.

2. Because Judge Sherwood was unable to give the exact language of the parties, but was allowed to state that he knew that it was talked there that others were to sign the note, and he understood from the conversation there that the parties whose names appear upon the note were to sign it, although he could not state the exact words used, but only the substance of the talk.

Upon plaintiff's theory of the case, he had a right to show all that took place at the inception of this note, and what the arrangement was between him and Sidney Stearns as to the other signers, as well as to the transfer of the property. The fact that Andrew J. Holmes was not present when this agreement between Stearns and plaintiff was made was immaterial. If Holmes signed this note as surety or joint maker before the property passed from plaintiff to Stearns, and plaintiff relied upon his signature, and would not have parted with his property without it, the consideration for such signing was sufficient, even though Holmes signed the note at the request of plaintiff, and not of Sidney Stearns. The question in issue was whether or not this signature of Holmes was obtained before the delivery of the note, and the passing of the property; and, to show this, evidence of what took place at the making of the note, and the arrangement as to who should sign it, was competent and material as bearing upon the probabilities of the transaction.

We are also satisfied that no error was committed in permitting Judge Sherwood to state the substance of his

recollection of the talk at his house.    He testified that
Mr. Steers told him there, in the presence of Sidney
Stearns, that he did not take a mortgage, but the note
was to be signed by "these parties," whom he under-
stood to be the parties defendant in this suit.    It is con-
tended that the judge was permitted to give his under-
standing and impressions.    While the witness used the
word "understood," still it was evident from his whole
testimony that he so used the word to express the sub-
stance of the conversation in his presence, as he recol-
lected it.    He says that he asked the plaintiff if the note
was to be secured in any way, and—

"I recollect Steers saying that the note—[here the
witness was interrupted by an objection, and after such
interruption he continues:]    But this was that night
there [referring to the transaction at his house], Mr.
Steers says: 'No; I didn't take any mortgage, but the
note is to be signed by these parties,'—as I now recollect
the substance of what was said.

"*Q*. All these parties whose names are on that note?
"*A*. Yes, sir; I *understood* that these men were to sign
this note."

One of the signers to this note—Hiram A. Holmes, a
brother of Andrew J. Holmes—was at the house of Judge
Sherwood the evening the note was drawn up.    He gave
testimony on behalf of the defendant.    It was claimed by
the plaintiff that Hiram told him that his brother Andrew
J. would sign the note; and Andrew J. Holmes testified
that Hiram asked him to sign the note, and he told him
he would see about it, but did not promise to do so.
Hiram A. Holmes is the son-in-law of Sidney Stearns,
and was interested and active in bringing about the trade.
He testified that he did not sign the note until four or
five days after its date, and that Andrew J.'s name was
not on the note at that time, and that Andrew J. never
agreed to sign the note, to his knowledge.    He was asked

on cross-examination if he did not state at Judge Sherwood's that his brother Andrew J. had promised to sign the note, and was also interrogated as to the part he took in negotiating the trade between the plaintiff and Sidney Stearns, and if he did not tell plaintiff that, if he would sell Stearns the cows, Stearns would pay some money down, and give a note for the balance signed by Andrew J. Holmes. This was objected to as not being in the presence of Andrew J., and therefore not binding upon him. The court instructed the jury in reference to this testimony as follows:

"And I wish to caution you, further, that the statement made by H. A. Holmes and Sidney Stearns, or whoever those statements were made by, at Judge Sherwood's, that A. J. Holmes was to sign the note, are no evidence whatever against A. J. Holmes. Those statements were introduced only for a specific purpose. These parties had testified upon their examination that A. J. Holmes made no such agreement whatever; and A. J. Holmes also testified that he made no such agreement. It was allowed to be put in evidence that they had said otherwise before Judge Sherwood, but this was simply as bearing upon the credibility to be given to their testimony. It is no evidence against A. J. Holmes that he did agree to sign this note, and you should not consider it for any such purpose."

The testimony of what took place at Judge Sherwood's house at the time of the making of the note was, as before said, admissible, and what was said there by those present who signed the note, as bearing upon the understanding and agreement upon which the note was taken, and as tending, also, to show whom the plaintiff expected to sign the note before it was to be taken by him as a completed paper, and before the property was to pass.

Andrew J. Holmes was asked upon cross-examination when he was first called upon in regard to this note. He answered as follows:

"About a year after it was due, George Steers called upon me. I made no arrangement with him to pay it. I made him no promise to pay it. I promised to pay the note if he would shave it. I promised to do so several times if he would discount it."

He was then asked how much he promised to pay for it. This was objected to as immaterial. The question was permitted, and he answered that he offered to give $800. On redirect examination, he further testified that he offered this sum as a compromise or settlement of the claim, as he did not want to go into court, and preferred to settle the matter in some other way. The court instructed the jury in relation to this testimony as follows:

"There is one other subject that I will call your attention to. That is with regard to the offer which it is claimed he [A. J. Holmes] made, to pay $800 for the note. If you find that that offer was made under such circumstances,—was not in such a way that it was an admission on the part of Dr. Holmes that he owed the note, or a part of it,—you may consider it then as bearing upon the question of whether he ever became originally liable upon it. It would not be conclusive evidence, then, that he ever became liable upon it. It would be for you to receive it, and consider it for what it is worth as bearing upon the question whether he became originally liable upon the note. If, however, you find he made the offer simply to settle the matter, without recognition that he was liable upon the note, then you should not consider it for any purpose."

There was no error in the allowance of this question, or in the charge of the court in relation to the use of the testimony by the jury.

It may further be said that the case was put to the jury on a basis altogether too favorable to the defendant Andrew J. Holmes. Upon the evidence in the case, coupled with his own showing, he was undoubtedly liable upon this note. It was plain enough that the bargain

between plaintiff and Sidney Stearns was consummated by the plaintiff upon the expectancy that Andrew J. Holmes would sign this note. He admits that his brother asked him to sign the note, and, although he did not promise to sign it, he told his brother he would see about it. When plaintiff came to him, and asked him to sign the note, saying, "I suppose your brother spoke to you about this," he took it, and signed it, without a word. Knowing, as he did, that plaintiff expected him to sign the note as security for the payment of the sum mentioned therein, and signing it as he did, his act furnished a sufficient consideration; and it would make no difference in his liability upon it whether he signed it before or after the property passed. He would be considered in law, as well as in justice, as having placed his name on the note at the time it bears date, if that should be necessary to give effect to his engagement. *Moies v. Bird,* 11 Mass. 436, 439; *Robbins v. Brooks,* 42 Mich. 62 (3 N. W. Rep. 256). Upon the record as presented to us, his liability was fixed, and the court would have been justified in directing a verdict for the plaintiff; and, in this view of the case, nearly all the errors assigned become immaterial. We have noticed some of them because of the importance placed upon them in the argument.

The judgment is affirmed, with costs.

The other Justices concurred.