## AILES *v.* MILLER.

[No. 7,935.   Filed January 24, 1913.]

1. PRINCIPAL AND SURETY.—*Creation of Contract.—Consideration.*— Where a note is signed by a surety at the time of its execution by the principal, the surety's undertaking will be deemed to be a part of the original transaction supported by the consideration moving to the principal but if his undertaking is entered into at a time subsequent to the execution by the principal, it is a new contract, and not binding on the surety, unless supported by a new consideration.   p. 282.

2. PRINCIPAL AND SURETY.—*Creation of Contract.—Ratification.*— Where, on borrowing money, the maker of the note told the payee that his father would become surety thereon, and subsequently to the death of the maker, the payee presented the note to maker's father, who signed same, saying that if the son had signed it for him it would have been all right, and that he would sign it then just the same as if the son were living, the acts of the father constituted a ratification of the agreement made by his son as of the date when the agreement was made, and rendered him liable as surety.   p. 282.

From Boone Circuit Court; *James V. Kent,* Special Judge.

Action by Samuel Ailes against Matthew G. Miller. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Charles M. Zion,* for appellant.

*B. S. Higgins,* for appellee.

ADAMS, J.—Appellant relies for reversal of the judgment rendered in this cause on an exception to the overruling of his motion for a new trial.

The evidence shows that on February 2, 1909, Joseph S. Miller applied to appellant for a loan of $420, representing that he had immediate use for that amount of money. He said he was about to sell a carload of cattle, and would repay the loan at any time. He further said that he would secure the note, and would give his father, appellee, as surety thereon. Appellant agreed to make the loan, and at once gave Miller a check for $420. A note was then prepared by appellant at the direction of Miller, payable one day after date, and immediately signed by Miller. Appellant then asked Miller whether he (appellant) should retain the note and have appellee sign it, or should he (Miller) take the note and secure his father's signature as surety thereon, to which Miller replied: "You take it, possibly you will see dad before I will, and the first time you see him, tell him to sign the note." Appellant agreed to do this. About six weeks later Joseph S. Miller died, up to which time appellant had not been able to see appellee. A few days after the death of Joseph S. Miller, appellant called on appellee in reference to becoming surety on said note, pursuant to the agreement between appellant and Joseph S. Miller. Appellant informed appellee that a loan of $420 had been made to his son, and also informed appellee of the agreement between appellant and appellee's said son in reference to appellee becoming surety on his son's note. Appellant said he had come over to see appellee and ask him if he was then willing to carry out the

agreement made by his son, and become surety on said note, to which appellant replied: "Yes, I will. If Joe had signed it for me it would have been all right. I will sign it now just the same as if Joe was living." Appellee then signed the note.

The only question presented and argued by the parties in their briefs is whether a note made under the circumstances shown by the evidence in this case is binding on a surety who was not present at the time of making the note, who knew nothing about it until long after the consideration passed to the principal and after the maturity of the note, and who received no new consideration at the time the note was executed by the surety.

It is earnestly insisted by appellee that where a note is signed by a surety at the time of its execution, the undertaking by the surety will be deemed to be a part of

1.  the original transaction, and supported by the consideration moving to the principal, but if the undertaking of the surety is entered into at a time subsequent to the execution by the principal, it is a new contract, and is not binding on the surety, unless supported by a new consideration. In support of this principle appellee cites the following cases: *Bingham* v. *Kimball* (1861), 17 Ind. 396; *Crossan* v. *May* (1879), 68 Ind. 242; *Clodfelter* v. *Hulett* (1880), 72 Ind. 137; *Favorite* v. *Stidham* (1882), 84 Ind. 423; *Owens* v. *Tague* (1892), 3 Ind. App. 245, 29 N. E. 784; *Brant* v. *Barnett* (1894), 10 Ind. App. 653, 38 N. E. 421; *Wipperman* v. *Hardy* (1897), 17 Ind. App. 142, 46 N. E. 537. No one will question the foregoing as being a correct statement of the law, and fully supported by the cases cited; but we do not think the rule announced can be held to apply to the facts before us.

It is true that the principal had received the full consideration, had signed the note, and put the same in-

2.  to the possession of appellant for the purpose of securing the signature of appellee long before the note

was presented to appellee. But the agreement of the principal to give his father as security on the note was not consummated until the note was actually signed by appellee. While appellee was not a party to the agreement, and knew nothing of it until the note was presented to him, such facts do not relieve him from the burden assumed. He was not compelled to ratify and carry out his son's agreement. He could have repudiated the agreement, but he did not do so. On the contrary, with full knowledge of the same, he said to appellant that if his son had signed his name to the note it would have been all right, and that he would sign it, the same as if his son were living. We think but one construction can be placed on this statement—that of affirmance and ratification of his son's agreement, as of the date when made.

We have been unable to find any case in this State where the facts are identical with the facts before us, but we think the law is well settled by the text-books and adjudicated cases in other jurisdictions. In 1 Brant, Suretyship and Guaranty (3d ed.) §24, it is said: "A principal signed an undertaking, and at the time it was agreed between the principal and creditor that certain other parties should sign it as sureties. The writing was delivered by the principal to the creditor when it was signed, and the creditor afterwards and at another time presented it to the sureties, who signed it, and it was held that they were bound." This refers to the case of *Williams* v. *Perkins* (1860), 21 Ark. 18, wherein that court said: "Although the signatures of the principal obligors were procured at one time, and those of the sureties afterwards, nevertheless, in contemplation of law, their promises were contemporaneous, and formed a part of one and the same general transaction; and the same consideration which supports the promise of the one also supports that of the other."

In *Winders* v. *Sperry* (1892), 96 Cal. 194, 31 Pac. 6, the court said: "It is true, in general, that one who adds

his signature to a promissory note after its execution and delivery is not bound unless there is a new consideration. But this is not that case. The execution and delivery were not complete until it was signed by appellant. But if we are bound to conclude that it had been executed and delivered as to one of the makers, there was a consideration for the subsequent signature of the appellant. As the contract was that he should sign the note, and the note was accepted only upon that understanding, the payee could have cancelled it or tendered it back if appellant had refused to sign, and maintained a suit at once for his money.''

In *Deposit Bank, etc.,* v. *Peak* (1901), 110 Ky. 579, 62 · S. W. 268, 96 Am. St. 466, it was held that a surety cannot escape liability on the ground that his undertaking was without consideration, because he signed the note after its delivery to the payee, where the note had been accepted on condition that he should sign it.

In *Bowen* v. *Thwing* (1894), 56 Minn. 177, 57 N. W. 468, the court said: ''It is true that the agreement that the surety should sign in this case was not made with her, and until she signed she was in no way bound by it; but, as any one who executes a contract binding on its face must be presumed to do so in order to bind himself, her signing must, if necessary to bind her, be referred to what took place when the note had its inception—to the agreement then made by the principal that she should sign. In signing, she in fact carried out that agreement, and she must be conclusively presumed to have so intended when she signed —to have intended to carry out any agreement with respect to her signing which the principal, who requested her to sign, had made.''

In *Smith* v. *Molleson* (1896), 148 N. Y. 241, 42 N. E. 669, the court held that where a building contract is entered into on the contractor's promise to furnish a bond as a guaranty of faithful performance, it becomes complete and binding on the other party thereto only on delivery of the

bond, and the mutual obligations imposed on the parties furnish a consideration for the bond, even if it is not given until after the execution and delivery of the contract, and after the contractor has entered on its performance.

In *Hawkes* v. *Phillips* (1856), 7 Gray (Mass.) 284, it was held that one not a party to a promissory note, who, after its delivery to the payee, indorses the same, pursuant to an agreement made with the payee before the making of the note, and without the maker's knowledge, is liable on the note as a joint promissor.

*Steers* v. *Holmes* (1890), 79 Mich. 430, 44 N. W. 922, was in some respects similar to the case at bar. In that case, a sale of personal property was made by the vendor on an expectancy that a brother of the vendee would sign his note given for the same, of which fact the brother had notice, having been asked by the vendee if he would sign the note, and although he did not promise to sign it, told his brother he "would see about it." After the note was signed by the principal, the payee took it to the brother of the principal, and asked him to sign it, saying, "I expect your brother spoke to you about this." Without making any reply, the brother took the note and signed it. The court said on page 439: "Knowing, as he did, that plaintiff expected him to sign the note as security for the payment of the sum mentioned therein, and signing it as he did, his act furnished a sufficient consideration; and it would make no difference in his liability upon it whether he signed before or after the property passed. He would be considered in law, as well as in justice, as having placed his name on the note at the time it bears date, if that should be necessary to give effect to his engagement." See, also, *Moies* v. *Bird* (1814), 11 Mass. *436, 6 Am. Dec. 179; *Childs* v. *Wyman* (1857), 44 Me. 433, 69 Am. Dec. 111; *McNaught* v. *McClaughry* (1870), 42 N. Y. 22, 1 Am. Rep. 487; *Standley* v. *Miles & Adams* (1858), 36 Miss. 434. We think the foregoing authorities conclusively show that

appellee was liable on the note in suit as a surety. The decision of the court was therefore not sustained by the evidence, and was contrary to law.

The judgment is reversed and the cause remanded to the Boone Circuit Court, with instructions to sustain appellant's motion for a new trial, and for further proceedings in accordance with this opinion.

NOTE.—Reported in 100 N. E. 475. As to when an apparent principal may show himself to be a surety, see 17 Am. Dec. 416.