J. M. VAN HOUTEN et al., Appellees, v. C. F. VAN HOUTEN, Appellee, et al., Appellant.

**BILLS AND NOTES:** Consideration—Collateral Signing. The collateral signing of a promissory note is supported by a consideration (1) when the collateral signer omits to inform himself of the agreement out of which the note arose, and (2) when part of such agreement was *that he should sign the note*. (See Book of Anno., Vol. 1, Sec. 9441, Anno. 27 *et seq.*)

Headnote 1:  8 C. J. p. 212.

Headnote 1:  3 R. C. L. 928.

*Appeal from Butler District Court.*—M. F. EDWARDS, Judge.

JUNE 21, 1926.

REHEARING DENIED DECEMBER 16, 1926.

Action on promissory note. Defense, want of consideration. Directed verdict for plaintiffs. Defendant Edna Crotty Pfaltzgraff appeals.—*Affirmed*.

*F. J. McGreevy,* for appellant.

*R. L. Saley* and *Healy, Thomas & Healy,* for appellees.

Morling, J.—C. F. Van Houten was in the produce business. The defendant Edna Crotty Pfaltzgraff was his wife, the plaintiff J. M. Van Houten his father, and plaintiff E. W. O'Brien his brother-in-law. John Campbell was a banker. C. F. Van Houten is referred to in the evidence, and will be here, as Cecil, and his former wife as Edna. Cecil seems to have disappeared. Edna attended to the business to some extent when Cecil was absent. On one of these occasions, Campbell told her of an overdraft of about $4,000 that would have to be attended to immediately. She told the plaintiffs about it. They had helped Cecil before. They went to the bank, and meantime Cecil arrived. Edna was not there, and took no part in the arrangement. Cecil had sold a car of eggs, which was in transit, and from which returns were expected. The overdraft was $4,200. It was arranged that plaintiffs should give the bank their six joint $1,000 notes, payable to the order of themselves, to take up the overdraft and provide temporary means for carrying on the business. As a part of this arrangement, Cecil agreed to give to the plaintiffs his note for $6,000, and that Edna should sign it with him. The notes were all drawn and signed, except that only Cecil signed the $6,000 note. The plaintiffs, Cecil, and the banker then left the bank, all supposing that the transaction there had been completed. Plaintiffs went to the residence of Cecil and Edna, and interviewed her. The dispute in the facts is over the occurrences at that time. Plaintiffs testify that the three of them went into the house and told Edna what the arrangement was,—what had been done,—and asked her to sign the $6,000 note, which she did.

Defendant testifies that Cecil was not in the house; that she knew nothing about how the plaintiffs settled, except that plaintiff Van Houten "said they had straightened the business up there at the bank so that Cecil could go ahead in the business, and as soon as the money came for the eggs that had been shipped, everything would go along all right; and he said, 'And we have signed a note for him at the bank, and we think it would be better if you would sign it, too.' I don't remember that they

said anything more to me than that about my signing the note. * * * they didn't tell me anything about the extra $2,000, or the amount over and above the amount of the overdraft, and I did not find out anything about that until I got notice of this suit. I did not read the note * * * Before I signed the note in question, there was nothing said by either of the plaintiffs about anyone else having said or promised that I would sign any such note * * * I didn't think I was going to be liable for this note at all, and thought that everything had been fixed up. I knew it was to cover this overdraft at the bank, but I didn't know just how much * * * I didn't read the note * * * because I didn't think it had anything to do with me, only inasmuch as I was the wife of Cecil, and thought for that reason that I had to sign it, and thought that they had everything fixed up, as they had said, and I couldn't see where I was to be held in any way. * * * I thought it was a matter of form * * * his father said that he thought I had better sign it, and so I did. That is the only explanation I can give * * * I must have told Mr. Van Houten that there was an overdraft of $4,000 at the bank at the time when I told him there was trouble at the bank. * * * I had never signed any other notes.''

She also says that they told her that night that $4,000 was to take care of an overdraft, and the balance of the $6,000 was to give Cecil some ready money, to go on with the business, that she ''knew that some arrangement would be necessary, not only to take care of the $4,000 overdraft, but also so as to have some ready money to go on until the money came back from the egg shipment.'' She repeated this last testimony, but, on redirect examination, said she did not know, at the time she signed the note, that about $2,000 was provided for ready money; that there was nothing said about borrowing any more money, and she thinks she was told about that after the suit was started.

The precise point urged as ground for reversal is that the settlement with the bank was fully completed before the defendant was asked to sign the note, or had anything to do with it; that, on her testimony, the jury might find that she knew nothing about the agreement that she was to sign the note; that she therefore did not sign in pursuance of or to carry out the agreement; but that her signature, under her testimony, was, as between the plaintiffs and her, merely an added name to a com-

pleted instrument, without any new consideration, and *nudum pactum*. Defendant concedes that, if she had been informed of the arrangement and had signed in pursuance of it, she would be bound. The question narrows down to the one whether, under the facts of this case, it was necessary to the validity of the defendant's obligation that she be specifically informed of the arrangement pursuant to which she was signing.

Consideration is a matter of contract, and. that which is claimed to be such must be within the express or implied contemplation of the parties. *Blain v. Johnson*, 201 Iowa 961, and authorities cited. In that case, the note had been completely executed by the original maker and accepted by the plaintiff before the defendant signed. Defendant was not a party to the agreement pursuant to which the note was given, and the evidence did not show that such agreement contemplated his signature. He signed pursuant to a later, independent arrangement, and the evidence was not such as to show, as a matter of law, that the new arrangement was sustained by a new consideration.

In *Ellis v. Clark*, 110 Mass. 398 (14 Am. Rep. 609), it is said:

"Any loss or disadvantage to the plaintiff, by giving up some right against a third person, or agreeing to abandon or delay enforcing some right against him, would be sufficient. But the consideration or motive of the promise must be known to the promisor. The minds of the parties must meet and agree upon the terms of the whole contract, including the promise on the one side and the consideration for it on the other. An agreement between the plaintiff and Paul, by which the former agreed to forbear to sue the latter, would not be a consideration for the defendant's promise, if not made at his request or communicated to him at or before the time of the making of his promise."

In that case, the original contract was a completed one, and the note to which defendant afterwards affixed his signature had been fully delivered and accepted. The note was given for wood, and when the maker was about to remove it, as he had a right to do, the seller (plaintiff) threatened to stop him if he didn't get security. Plaintiff proposed to the maker that he get the defendant to indorse the note, which the maker said he would do. The maker interviewed defendant, and then plaintiff went to him, and defendant indorsed the note, saying that that

would hold him. The purchaser then removed the wood. The maker and the defendant both testified that the maker said nothing to defendant about signing the note, no consideration was paid for it, and defendant did not know that plaintiff altered or was to alter his condition in any way on account of defendant's signature. Defendant was not made acquainted with any of the circumstances connected with the note. The later arrangement between the plaintiff and the original maker was not known to defendant. The defendant knew only of the note. That only was within his contemplation. The new arrangement could not be said to be within either his express or his implied contemplation.

In the case before us, it must be borne in mind that defendant makes no claim on account of her testimony that she understood that she was signing merely as a matter of form, or on account of her testimony as showing an agreement to sign as cosurety with plaintiffs on the note to the bank. No fraud or mistake is claimed. No reason for her not reading the note and noticing that she was signing with her husband a note to the plaintiffs is alleged. On the evidence, she must be held to have intended to sign collaterally with her husband. She knew that there was an arrangement or agreement pursuant to which the note had been given, and she knew that she was signing the note collaterally. She was not a principal party to the contract, and her knowledge of its terms was not necessary to its validity. In signing collaterally, or as surety, she might waive, if she chose, the ascertainment of the terms of the principal agreement. She must be held to have known that she was signing with her husband a note to the plaintiffs. We are of the opinion that the agreement under which the note was signed was necessarily in contemplation, and that the case in this respect is simply one of waiver of inquiry by the surety of its terms. Authorities such as those that have been cited, therefore, have no application. The note and the agreement pursuant to which it was given, on the undisputed evidence, were not complete or to become effective until she signed. With her signature to the note, the original arrangement became a completed contract, and the consideration for that contract and for the note supports her signature. *Moies v. Bird*, 11 Mass. 436 (6 Am. Dec. 179) ; *Bowen v. Thwing*, 56 Minn. 177 (57 N. W. 468) ; *McNaught v. McClaughry*, 42 N. Y.

22; *Ailes v. Miller*, 52 Ind. App. 280 (100 N. E. 475); *Harrington v. Brown*, 77 N. Y. 72; *Pennsylvania Coal Co. v. Blake*, 85 N. Y. 226; *Merchants St. Bank v. Roline*, 200 Iowa 1059; *Pauly v. Murray*, 110 Cal. 13 (42 Pac. 313); *Winders v. Sperry*, 96 Cal. 194 (31 Pac. 6); *Stroud v. Thomas*, 139 Cal. 274 (72 Pac. 1008).

After the parties left the bank, it was discovered that, by oversight, plaintiffs had not indorsed the six notes payable to their order, and their indorsement was made after defendant signed. If she had not signed the note, in pursuance of her husband's agreement, they might still have retired from the transaction.

We are of the opinion that the plea of want of consideration is not sustained. In this view, the other rulings complained of are without prejudice, and do not call for attention.

The judgment is—*Affirmed.*

DE GRAFF, C. J., and STEVENS, FAVILLE, VERMILION, and ALBERT, JJ., concur.