## OTTO v. REPUBLIC NAT. CO.

### No. 13366.

Court of Civil Appeals of Texas. Dallas.

May 28, 1943.

Rehearing Denied June 25, 1943.

Leo R. Tresp, of Dallas, for appellant.

Malone, Lipscomb, White & Seay, Eugene De Bogory, and Austin S. Dodd, all of Dallas, for appellee.

· YOUNG, Justice.

The suit was upon a promissory note, brought by Republic National Company, owner and holder, after maturity. At conclusion of testimony, plaintiff's motion for instructed verdict was sustained, with resulting judgment against Republic National Bank, Independent Executor of the Estate of W. J. Wyatt, Robert L. Clark and L. J. Otto, jointly and severally, as co-endorsers for the full amount due in principal, interest and attorney's fees. From aforesaid action of the trial court, defendant Otto alone assigns error, with Republic National Company as the sole obligee in his cost bond on appeal to this Court.

The note was for $15,000, dated October 21, 1937, due in ninety days, executed by Dallas Brewery, Inc., through Robert L. Clark, followed by Clark's signature individually; the names of Otto and W. J. Wyatt appearing on the back thereof. It was payable to order of Republic National Bank of Dallas, bearing ten per cent. interest after maturity, and with usual provision for attorney's fee (ten per cent.) in event of placement for collection. The proceeds of said note were promptly credited to the checking account of Dallas Brewery with payee Bank, and used, to the amount of $10,039.74, in paying off an existing overdraft of such corporation. W. J. Wyatt endorsed the instrument after November 5 and before December 2, 1937, when L. J. Otto signed as endorser.

Appellant's chief defense lies in the claim of no consideration for his subsequent endorsement of this paper. The gist of other points of error is that he was merely an accommodation endorser for Dallas Brewery and W. J. Wyatt; that Wyatt was, in fact, principal on said note and that he (Otto) was entitled to judgment over against the estate of Wyatt; also against R. L. Clark as co-maker.

Antecedent facts and events leading up to the obligation just described, relating to the Dallas Brewery, its management, financial condition, and the connection of all defendants therewith (Clark, Otto and Wyatt), must first be stated. The Brewery was not sued, having gone into bankruptcy in 1939; and W. J. Wyatt being deceased, his estate was impleaded by service on Republic National Bank as Independent Executor. During 1937 and earlier, Messrs. Clark, Wyatt and Otto were directors of said Brewery corporation, the two first named continuing to hold considerable stock. Except for a qualifying share, Otto had sold his stock to Clark in 1936, evidenced by the latter's note for $29,890, secured by some 590 shares as collateral. Appellant had been vice-president of the named company in 1936, actively supervising its affairs, but in 1937, his connection was as director only, additional to above-mentioned interest in unpaid stock.

The record indicates an unsatisfactory condition of Brewery finances for several years, necessitating numerous endorsements by directors on corporate notes at the Republic Bank to avoid overdrafts; for instance, by Wyatt and others in 1934; similarly, by Otto in 1935 and 1936, and later by R. L. Clark. These overdrafts began to recur along in April, 1937, and continued with slight intermission until the consummation of the $15,000 loan. Robin Williams was vice-president of Republic Bank at the time, in charge of the Brewery's liability account, though he was not a Bank employe when his deposition was taken for this trial. So testifying, Williams stated that in August or September of 1937, he talked with W. J. Wyatt (also a director in the Bank) about said overdrafts and was told to go ahead and pay them, that he, Wyatt, would be responsible up to $7,500. The overdrafts continued, fluctuating from a high point of more than $8,000 on October 1 to a low of $2,700 on October 16, about which time, Mr. Wyatt, for the Brewery, and the Bank, through Williams, had conversations relative to a

$15,000 loan to cover existing overdrafts and provide new money for the Brewery during the forthcoming dull season; Wyatt first advising Williams that he would get stockholders Earnest and Willard to endorse the loan, but they having refused, Mr. Wyatt later reported that he was "contacting Mr. Otto at his home."

We quote further excerpts from the testimony of Robin Williams:

"Now, it is a fact, is it not, that the $15,000.00 loan that was made, was negotiated with the Bank by Mr. Wyatt? A. Yes sir.

"Q. Was that done through you or how was it handled? Was it submitted to a committee? A. Submitted to a committee.

"Q. And approved by the committee, and then the loan was made? A. That is right.

"Q. Do you recall the date on which this note was actually signed? A. No, I don't.

"Q. Isn't it a fact that this $15,000.00 was actually advanced and placed to the credit of the Dallas Brewery, Inc. prior to the date on which this note was actually signed? A. I think so. And I think that that overdraft was more than $7,500.00, due to the fact that that note was coming up and the delay was occasioned by Mr. Wyatt's accident or something like that, to keep it from going on through.

"Q. In other words, plaintiff's Exhibit B here shows that a deposit was actually made to the credit of the Dallas Brewery, Inc. of $14,812.50 on October the 21st, 1937, and the note actually bears that same date but, as a matter of fact, the note was not signed until quite a few days after that? A. That is true.

"Q. Now, do you recall in connection with that a conversation with Mr. Clark with reference to that matter, at which time he objected to signing the note? A. No.

"Q. Do you recall that it was several days before he actually did sign the note? A. I can't say about that. I know there was a delay in getting it signed, but, as I remember it, it was all due to Mr. Wyatt's accident entirely. * * *

"Q. The agreement or understanding of the Bank, according to the records here, was, was it not, that the Dallas Brewery, Inc., make the note and that Robert L. Clark, W. J. Wyatt and L. J. Otto would endorse the note? A. That is right. * * *

"Q. As a matter of fact, at the time this note was given, the Bank was looking primarily to the endorsement of Mr. Wyatt for payment of the note? A. Looking to it just as the note read, 'Any or all of them.' * * *

"Q. Did you ever discuss the note with Mr. Otto? A. The first that Mr. Otto told me that Mr. Wyatt had taken it up with him, he asked for his cooperation. And I assumed it was gone into thoroughly between them. Mr. Otto came into the Bank one day and told me that they had called him over to the cage to sign this note: That he looked on it for Mr. Wyatt's endorsement, and it wasn't there, and they told him Mr. Wyatt had broken his arm, and he came over to my desk and told me, he said he was going to cooperate with Mr. Wyatt but that they told him that he had not endorsed it because he had broken his arm, and he had told him that his arm was broken too.

"Q. Mr. Otto at that time thought there was a joke about his arm being broken, probably? Now, do you know when Mr. Otto did sign that note? A. No, I couldn't say. * * *

"Q. It was a month or two after the note was executed? A. It was sometime after."

Appellant testified in substance that he first heard of the $15,000 loan "along in the last week in October, 1937," when Mr. Wyatt called him on the 'phone, although in September the latter had discussed with him the Brewery's need for money to carry it through the winter; that he had agreed to cooperate in the $15,000 transaction upon assurance by Mr. Wyatt of no responsibility; that he (Otto) first saw the note on November 5, his sole ground for not then endorsing it being the absence of Wyatt's signature; that he had signed the paper December 2, at which time it bore Wyatt's name. Appellant knew the note was dated October 21, but stated that neither Wyatt nor the Bank told him the proceeds thereof had been immediately credited to the Brewery account, or that the loan went principally to pay an overdraft of $10,039.74; however, he admittedly made no personal inquiry. He further testified:

"Q. Tell us why you signed that note? A. Well, I promised Mr. Wyatt I would do it, and I made good my promise; he requested me to do it, and I promised I would and I did. * * * *

"Q. You signed the note for the purpose of letting the Dallas Brewery, Inc. get the money? A. Yes sir.

"Q. And you did it with full knowledge that some . character of arrangements had been made with the Bank on behalf of the Brewery that called for your endorsement? A. I didn't know anything about that.

"Q. I am not asking whether you knew the details; *isn't it a fact that when you put your signature on this note you knew some character of arrangement had been made by which the Brewery was going to borrow $15,000.00, and as a part of the deal you were to endorse the note?* A. *I certainly did.*

"Q. *You knew that and signed the note knowing that to be true?* A. *Yes sir.*" (Italics ours)

A work sheet of the Bank's Loan Committee, dated October 21, 1937, labeled "New Loans $1,000.00 and over," initialed as approved by various officers, was placed in evidence by appellant, and, relative to the instant note, carried the following notation: "Dallas Brewery, Inc. Total Owing $30,000 New Loan $15,000 Rate 5% Maturity 90 da. OKed by RW Robert L. Clark endorses all W. J. Wyatt is to endorse $15,000. Loan handled today. L. J. Otto is also to endorse this $15,000"; and appellant sought to elicit from Mr. Cumby, another Bank official, that the foregoing data as to Otto had been added the next day, or later; but the witness was shown to have no firsthand knowledge of the transaction, testifying merely from the particular record and customary methods of operation. A liability ledger sheet of Republic Bank was also in evidence; and it was the testimony of Sam Busby, ledger clerk who made the record, that, under instructions from his superior, Mr. Anderson, space had been left for entry of endorsers; and when Wyatt and Otto signed on December 2, 1937, their names were typed therein. He was not permitted to testify to the contents of a memorandum, attached to the note when it first came to his desk for posting (but since destroyed), in effect, that Wyatt and Otto were also to be endorsers; and the court's ruling in such regard is challenged by appellee in appropriate bill of exceptions and counterpoints.

Appellant primarily complains of the adverse instructed verdict and of error in not sustaining his own motion for peremptory instruction, asserting that the undisputed

evidence fails to show any consideration for the subsequent endorsement of Otto, the same having been affixed to the note long after completion of the loan transaction and after the money was paid over to the principal; and though plaintiff company pleaded some sort of an arrangement between Wyatt, Clark and Otto, existing prior to October 21, 1937, by the terms of which Otto agreed to endorse such note, yet no proof appears in support of any such agreement. Pertinent to the contention thus made are the following extracts from appellant's trial pleading: "This defendant further shows the court that about the month of August, 1937, the said W. J. Wyatt advised this defendant that he, the said W. J. Wyatt, was interested in determining the amount of money that would be or would become necessary to be expended to finance the Dallas Brewery, Inc. through the dull winter months and later, on or about the 21st day of October, 1937, or within a few days thereafter, the said W. J. Wyatt further conferred with this defendant and represented to this defendant that the Dallas Brewery Inc. would need to make a loan to finance it through the dull winter months and represented to this defendant that he, the said W. J. Wyatt, had negotiated for a loan with the Republic National Bank of Dallas, Texas, in the sum of $15,000.00 with which to pay the operating expenses of the Dallas Brewery, Inc. through the winter months and requested this defendant to endorse said note. * * * That thereafter shortly after the 21st day of October, 1937, the said W. J. Wyatt informed this defendant that he was negotiating or causing to be negotiated a loan in the sum of $15,000.00 with the Republic National Bank of Dallas for the purpose of financing such Dallas Brewery, Inc. through the dull winter months and requested that this defendant sign such note as a surety or endorser, advising this defendant that he, the said W. J. Wyatt, would also sign said note." And referring to the note, appellee Republic Company, by supplemental petition, alleged in part: "Said loan was so approved and made by said Bank on the representation and promise of said W. J. Wyatt that he had secured or obtained from said Clark and Otto their promise to cooperate with him for said loan and would sign said note with him as endorser for said Dallas Brewery, Inc. Plaintiff believes and charges the fact to be that before said loan was so made, said Clark and Otto had promised said Wyatt that they would cooperate with him to obtain said loan and would endorse said note, and they signed same in keeping with their promise and understanding so made. * * * About the time said loan was pending for approval, said Wyatt suffered a broken arm and he thereby was physically disabled for some time and he did not sign same until some time after the date thereof, and the said Otto waited to attach his signature until he saw the signature of said Wyatt thereon, but said Wyatt and Otto, in keeping with their promise previously to do so, signed said note to confirm and ratify such promise and agreement with said Bank, and it is possible that Otto and Wyatt did not subscribe their names until as late as December 2, 1937."

It is well settled that the signature of a party upon a note after its completion and delivery must be supported by a new and independent consideration, as announced in Baker v. Wahrmund, 5 Tex. Civ.App. 268, 23 S.W. 1023; Simmang v. Farnsworth, Tex.Civ.App., 24 S.W. 541; King v Wise, Tex.Com.App., 282 S.W. 570, and other cases cited by appellant. But it is equally well settled that one who endorses a note in pursuance and consummation of a prior arrangement between maker and payee, of which he has knowledge, participates in the original consideration for the note and is therefore bound. See Anno., Devitt v. Foster (Miss.) 74 A.L.R. 1092; Dittmar v. Frye, 124 A.L.R. 717; 10 C.J.S., Bills and Notes, § 145, p. 600; Cook v. Parker, 22 Cal.App. 2d 539, 71 P.2d 591; Van Houten v. Van Houten, 202 Iowa 1085, 209 N.W. 293; and among other out-of-state decisions are: Eitel v Farr, 178 Mo.App. 367, 165 S.W. 1191; Fidelity & Deposit Co. v. O'Bryan, 180 Ky. 277, 202 S.W. 645, L.R.A.1918E, 574; Bowen v. Thwing, 56 Minn. 177, 57 N.W. 468; Ailes v. Miller, 52 Ind.App. 280, 100 N.E. 475.

Applying the principle just stated to the instant facts, we conclude that at the time appellant endorsed the note in question, he did so with the knowledge that such action was in keeping with a prior agreement made with the Bank by W. J. Wyatt; his endorsement, therefore, related back to the date of the note and was supported by the original consideration, although the particulars of the

earlier agreement may not have been known to him. We reach this conclusion in the light of appellant's own pleading, above quoted, with which his italicized testimony is entirely corroborative.

Our state decisions recognize the rule that a subsequent endorser may be liable when not a stranger to the original transaction. This is apparent from several of appellant's citations, viz.: The Simmang case, supra, where the court points out: "There was no agreement at the time that Cavanaugh signed the note that appellant's name would be secured to the note, and when he signed it the consideration was fully executed, and the debt had been created without the inducement of appellant's suretyship. * * * Also where a promise is made at the time the note is executed by the principal that the name of the surety will be obtained to the note, and the surety afterwards signs the note, the consideration would be legal and valid." See, also, Kugle v. Traders' State Bank of Cleburne, Tex.Civ.App., 252 S.W. 208; McAfee v. Jeter & Townsend, Tex.Civ. App., 147 S.W.2d 884.

Nor is appellant in position to claim that he was merely an accommodation endorser as to payee Bank, or to Republic Company, its assignee. Mr. Otto, at the time, was both a director and stockholder of the Brewery, holding a note secured by 590 shares of corporate stock. He frankly admitted that the concern was needing additional money and that his endorsement of the Bank note was to protect his interest in the named enterprise. When a director or stockholder signs the corporation's paper for the protection of his interest therein, he cannot claim to be an accommodation endorser or maker; Robertson v. City Nat. Bank, 120 Tex. 226, 36 S.W.2d 481; Commercial Inv. Co. v. Graves, Tex.Civ.App., 132 S.W. 2d 439, writ refused.

Appellant urges that W. J. Wyatt was primarily liable on the note and his estate should be so held, resulting in only secondary liability as to defendant Otto, in that, during August or September, 1937, Mr. Wyatt had assured Robin Williams, for the Bank, that he would be responsible for overdrafts to extent of $7,500; that payment of Brewery checks would have been stopped but for such promise; and the note of October 21 being given largely in extinguishment of his liability to pay the existing overdraft, Wyatt became a principal maker and judgment should have been rendered accordingly. The alleged guaranty was within the statute of frauds, which was invoked. A study of the record reveals that the Bank did not rely on the promise of Mr. Wyatt as an original obligation. Housley v. Strawn Merchandise Co., Tex. Com.App., 291 S.W. 864. It continued to charge the Brewery account with checks, apparently permitting the sharp increase of overdraft in consideration of the loan in process of negotiation. Similarly, to appellant's plea of accommodation endorser for Wyatt, because of the latter's assurance to Otto of no responsibility, Art. 3716, R.S., was interposed, as a transaction with the deceased. The testimony was thus properly excluded by the court, thereby disposing of the particular counter claim.

A written memorandum, attached to the $15,000 note while en route to permanent records of the Bank, was offered in evidence on behalf of appellee, but ruled out. It disclosed, in effect, that Wyatt and Otto were to be endorsers, and sufficient predicate had been laid for the introduction of its contents. The data was made up at the time of the transaction, was duly authenticated as to handwriting, and came from an authorized source in customary methods of bookkeeping; 17 Tex.Jur., Evidence, Sec. 347, p. 779; McCormick and Ray on Evidence, Sec. 560. It was competent evidence bearing on the main issue and exclusion thereof was error, though harmless in view of the trial court's subsequent action. No fact issues for the jury were presented, and the trial court ruled correctly on a substantially uncontroverted record; the judgment under review is accordingly affirmed.

Affirmed.